MOORE, J.
| ]The defendant, Justin Keith Green, was convicted of the computer-aided solicitation of a minor, in violation of La. R.S. 14:81.3. He was sentenced to serve 10 years’ imprisonment at hard labor, without the benefit of parole, probation, or suspension of sentence. The defendant appealed, urging three assignments of error. For the following reasons, we affirm.
FACTS
The victim’s mother, Robin Wells, contacted the Springhill Police Department after learning that her 12-year-old daughter, D.M., had been contacted on Facebook by an adult male. Thereafter, she provided Detective Bryan Montgomery of the Springhill Police Department and the Internet Crimes Against Children Task Force with her daughter’s Facebook account information and her cell phone. Det. Montgomery discovered that the defendant, Justin Green, was on D.M.’s Face-book list of “friends.” Green’s public profile page on Facebook reflected a series of messages between D.M. and Green, as well as a photograph showing D.M., Green, and others on a merry-go-round. Green later denied that he was the person in the photograph, and he did not recall any conversations with D.M. He did recall some of the other conversations reflected by the Facebook profile. Det. Montgomery located a “contact” on D.M.’s cell phone named “Justin Green ” While he was in possession of D.M.’s phone, on May 23, 2012, a text message from “Justin Green” was received. The message asked: “You want to do something, you want to go hang out, you want to do something.” Det. Montgomery then surreptitiously engaged in a text message conversation with Green, posing as D.M. Green suggested that the two could hang out at the park, or they could go to a pond and D.M. could go swimming. The conversation continued as jjjfollows:
D.M.: Y only me
Green: I don’t look good in trunks
D.M.: Well I don’t look good in a suit
Green: Then don’t wear one and I won’t look
D.M.: Lol yea right
Green then suggested that D.M. could swim with her clothes on, but Det. Montgomery/D.M. responded that, “then I would be wet walkin home.”
The conversation continued:
Green: Then what are we going to do then.
D.M.: U tell me
Green: I want some head but I can’t get some from you:(
D.M.: Y
*336 Green: I didn’t think you would? ?
D.M.: Y
Green: So would you
D.M.: If u want me 2
Green: Yea
At Green’s request, a photograph of D.M. was sent to his cell phone. He suggested that the two meet at the park in approximately one hour and sent a photograph of himself to D.M. Green also agreed to bring a condom to their meeting place, at the request of Det. Montgomery/D.M. Green changed the meeting location to the post office, telling Det. Montgomery/D.M. that he was outside of the post office at 5:17 p.m.
Det. Montgomery went to the post office and found Green at the|3Farmers’ Market, which is located directly across the street from the post office. Green was placed under arrest, advised of his rights and patted down. Green had an ear bud in his ear that ran down into a cell phone that was in his pocket, which Det. Montgomery seized. Det. Montgomery testified that he did not observe Green send a text message, nor was Green using his cell phone at the time of his arrest. He identified the defendant as the man he arrested.
Det. Montgomery removed the back of the cell phone and its battery to obtain the serial number and information about the data card. On May 30, 2012, Det. Montgomery applied for and obtained a search warrant for the cell phone seized from Green at the time of his arrest and for D.M.’s cell phone. On June 17, 2012, Det. Montgomery took both cell phones to the computer forensic lab at the Bossier City Marshal’s Office. D.M.’s cell phone was hooked up to a Cellebrite[1] and Det. Montgomery was able to retrieve all of the text messages from the phone. However, Green’s cell phone was not compatible with the machine. The next day, Det. Montgomery turned on Green’s cell phone, and he was able to take pictures of the text messages on the phone. Green was charged with the computer-aided solicitation of a minor, in violation of La. R.S. 14:81.3, and indecent behavior with juveniles, in violation of La. R.S. 14:81.
On July 16, 2012, Green filed a motion to suppress evidence obtained as a result of the warrantless search. He asserted that a search of the device was conducted prior to the application for and issuance of a search warrant. He 14argued that any evidence retrieved from “any digital storage device and/or cellular telephone owned or possessed” at the time of his arrest should be suppressed because the data contained on the cell phone was seized without a valid warrant or Green’s consent.
On August 31, 2012, the motion to suppress- came before the court for hearing. Det. Montgomery testified that, with the consent of D.M.’s mother, he took over D.M.’s Facebook account and cell phone. He further testified that to apply for a search warrant he removed the back of the cell phone and removed the battery. He identified Green’s cell phone as a Samsung Model SCH-R375C with an MEID or serial number of A00002F7757DO, and stated that the phone had an eight gigabyte micro SD card. He testified that at the time he obtained this information, he did not have Green’s consent to search the cell phone or a search warrant. Prior to obtaining the *337 search warrant, he never turned on Green’s cell phone to search for any information on it, and he never connected the cell phone to any type of electronic device. He testified that he got the serial number for purposes of identifying the cell phone and that by retrieving the serial number, he did not obtain any of Green’s personal information. Det. Montgomery testified that he recorded the serial number of the cell phone for purposes of identifying the cell phone that Green had on his person at the time of his arrest for a search warrant.
The state argued that a search warrant must specifically articulate what is to be searched, when, and by whom, and in this case the serial number was obtained only to specifically identify the item to be searched. The state further argued that no expectation of privacy existed relative to the serial number on Green’s cell phone. Therefore, the motion to suppress should be denied [¡^because the evidence was obtained through a lawful search of the contents of the phone performed after a search warrant was issued.
The defense argued that a search is a search, regardless of whether it is performed to obtain identifying information for a warrant or to obtain inculpatory evidence. The defense argued that the state failed to offer any exigent circumstances for searching Green’s cell phone prior to obtaining a search warrant. The defense further argued that the serial number of Green’s cell phone could have been obtained without illegally searching the cell phone by issuing a subpoena to the phone company for the phone records. Therefore, the defense asserted that all of the records and evidence taken from Green’s cell phone were tainted by the initial illegal search performed prior to the issuance of the warrant.
The trial court denied the motion to suppress and stated the following:
The phone, obviously, is in possession of the Springhill police as the result of a search incident to a lawful arrest. The narrow issue in this case, as stated by both counsel, is whether the fact that Officer Montgomery removed the back from the phone to obtain the serial number and other identifying information constituted a search. I feel that the phone is simply a piece of hardware and the operative information to constitute a charge or potential charge against the defendant would be the contents of that phone, whether it be a text message, a voice mail, a picture image or whatever, and none of that was obtained until after Officer Montgomery obtained the search warrant. The search warrant could not have been obtained without specific information identifying the phone which would put him in the untenable position of perhaps not being able to find, obtain the search warrant at all without identifying information. So I find that under the facts of this case, removing the back of the phone was not a search and the motion to suppress is denied ...
Green’s application for a writ of supervisory review was denied.
On March 15, 2013, Green withdrew his request for a jury trial and requested a bench trial. A bench trial was held on March 19, 2014.
| fiDet. Bryan Montgomery was admitted as an expert witness in crimes against children. He testified to the above facts regarding his investigation of this matter, as well as the arrest of Justin Green. During Det. Montgomery’s testimony, the state sought to admit screen shots of Green’s Facebook profile into evidence as Exhibit S-2. Defense counsel objected to the admission, citing the lack of foundation and hearsay. She argued that the profile pages had not been properly authenticated. The state argued that the statements *338 contained in the profile were not hearsay because they were personal, adoptive, and authorized admissions against interest. The trial court overruled the objections, finding that the profile was available to the public. The defense later objected that the Facebook profile was not a public record. The defense also objected to the admission of the transcript of text messages obtained from D.M.’s cell phone as unauthenticated and hearsay. The trial court overruled the objection, finding that the report was generated by Det. Montgomery, using a software program.
The victim, D.M., testified as to her relationship with Justin Green. She stated that she met Green in 2012 through McKenzie Covington, Green’s cousin and her best friend. She identified the conversations and posts on Green’s Facebook profile as originating from her profile. She admitted that she lied about her age when she set up her own Facebook profile because Facebook requires users to be 13 years old. D.M. testified that she often wore t-shirts identifying her school and grade level in the presence of Green. Though D.M. never saw Green send a sexually explicit message, she testified that she did see him send a message while at the Springhill Library. He asked D.M. to go to the park with him, which D.M. testified made her feel 17uncomfortable.
Justin Green testified in his own defense. Green testified that he knows McKenzie Covington, but that she is not his cousin. He referred to her as “an acquaintance of an acquaintance.” Green testified that he always accessed Facebook from the Springhill' Library, but that he was not conscientious about logging out of his account. Tommy Green, the defendant’s brother, testified that he never saw his brother log into Facebook from his cell phone. Green testified that, on May 23, 2012, he was mowing grass at an oilfield location in Shreveport. He left his cell phone, which was not protected by a pass code, in the crew truck. He testified that he did not regain possession of his cell phone until approximately 5 p.m. While he admitted that the cell phone, admitted into evidence as Exhibit S^4, was his phone, he testified that he did not send the text messages found on that cell phone. Green denied knowing D.M.’s age or requesting that she meet him anywhere.
The trial court found Green not guilty of indecent behavior with juveniles. Judge Robinson noted that no evidence had been introduced that Green committed any lewd or lascivious act. However, the trial court found overwhelming evidence to support the charge of computer-aided solicitation of a minor. Judge Robinson noted that D.M. testified that she often wore shirts identifying herself as a middle school student, so Green should have known that she was under the age of 17. Green was found guilty of computer-aided solicitation of a minor, in violation of La. R.S. 14:81.3. On June 13, 2014, Green was sentenced to 10 years’ imprisonment without the benefits of parole, probation, or suspension of sentence. This appeal followed.
DISCUSSION
IsWe consider first Green’s third assignment of error in which he alleges that there was insufficient evidence introduced at trial to support a finding of guilt beyond a reasonable doubt on the single charge of computer-aided solicitation of a minor. When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of *339 fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in a light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,-253 (La.App. 2 Cir. 4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
Green argues that there was no evidence presented that he was the individual who transmitted any text messages to D.M. He asserts that, at the time the text messages were sent, he was not in possession of his cell phone. The defendant calls into question the credibility of D.M., noting that she lied about her age in order to obtain a Facebook account.
The state contends that the evidence presented at trial, including photos of text messages sent from Green’s cell phone and the forensic report from D.M.’s cell phone, was sufficient to support the verdict.
A claim of insufficient evidence is determined by whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a treasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). On review, the appellate court considers whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Crossley, 48,-149 (La.App. 2 Cir. 6/26/13), 117 So.3d 585, writ denied, 2013-1798 (La.2/14/14), 132 So.3d 410. The appellate' court does not assess the credibility of witnesses or reweigh evidence, and gives great deference to the jury’s decision to accept or reject the testimony of a witness or the weight the jury gives to direct or circumstantial evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442; State v. Eason, 43,788 (La.App. 2 Cir. 2/25/09), 3 So.3d 685, writ denied, 2009-0725 (La.12/11/09), 23 So.3d 913, cert. denied, 561 U.S. 1013, 130 S.Ct. 3472, 177 L.Ed.2d 1068 (2010); State v. Hill, 42,025 (La.App. 2 Cir. 5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529; State v. Hill, 47,568 (La.App. 2 Cir. 9/26/12), 106 So.3d 617.
Direct evidence provides proof of the existence of a fact, for example, a witness’s testimony that he saw or heard something. State v. Lilly, 468 So.2d 1154 (La.1985). Circumstantial evidence provides proof of collateral facts and circumstances, from which the existence of the main fact may be inferred according to reason and common experience. Id. When the state relies on circumstantial evidence to establish the existence of an essential element of a crime, the court must assume every fact that the evidence tends to prove and[inthe circumstantial evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. State v. Lilly, supra; State v. Robinson, 47,437 (La.App. 2 Cir. 11/14/12), 106 So.3d 1028, writ denied, 2012-2658 (La.5/17/13), 117 So.3d 918. The trier of fact is charged with weighing the credibility of this evidence and on review, the same standard as in Jackson v. Virginia is applied, giving great deference to the fact finder’s conclusions. State v. Hill, supra. When jurors reasonably reject the hypothesis of innocence advanced by a defendant, the. hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Sosa, 2005-0213 (La.1/19/06), 921 So.2d 94, 99, rehearing denied, (3/10/06); State v. Capt *340 ville, 82-2206 (La.1984), 448 So.2d 676, 680, rehearing denied, (3/23/84).
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Glover, 47,311 (La.App. 2 Cir. 10/10/12), 106 So.3d 129, writ denied, 2012-2667 (La.5/24/13), 116 So.3d 659; State v. Speed, 43,786 (La.App. 2 Cir. 1/14/09), 2 So.3d 582, writ denied, 2009-0372 (La. 11/6/09), 21 So.3d 299. The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness in whole or in part; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert, denied, 531 U.S. 840, 121 S.Ct. 104,148 L.Ed.2d 62 (2000); State v. Woodard, 47,286 (La.App. 2 Cir. 10/3/12), 107 So.3d 70, writ denied, 2012-2371 (Laj4/26/13),n 112 So.3d 837; State v. Hill, supra.
A victim’s or witness’s testimony alone is usually sufficient to support the verdict, as appellate courts will not second-guess the credibility determinations of the fact finder beyond the constitutional standard of sufficiency. State v. Davis, 021043 (La.6/27/03), 848 So.2d 557, 559. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the fact finder, is sufficient support for a requisite factual conclusion. State v. Robinson, 02-1869 (La.4/14/04), 874 So.2d 66, 79.
La. R.S. 14:81.3(A)(1) provides:
Computer-aided solicitation of a minor is committed when a person seventeen years of age or older knowingly contacts or communicates, through the use of electronic textual communication, with a person who has not yet attained the age of seventeen where there is an age difference of greater than two years, or a person reasonably believed to have not yet attained the age of seventeen and reasonably believed to be at least two years younger, for the purpose of or with the intent to persuade, induce, entice, or coerce the person to engage or participate in sexual conduct or a crime of violence as defined in R.S. 14:2(B), or with the intent to engage or participate in sexual conduct in the presence of the person who has not yet attained the age of seventeen, or person reasonably believed to have not yet attained the age of seventeen.
The legislature has defined the term “sexual conduct” to include actual or simulated sexual intercourse, masturbation, lewd exhibition of the genitals or any lewd or lascivious act. “Electronic textual communication” means a textual communication made through the use of a computer online service, Internet service, or any other means of electronic communication. La. R.S. 14:81.3(D).
The statute contemplates two scenarios in which a person can be in violation thereof. The first such scenario, or prong, addresses the perpetrator’s | i2conduct that intends to persuade, induce, entice, or coerce the person to engage or participate in sexual conduct. The second scenario envisions the perpetrator’s communication with the intent to engage or participate in sexual conduct in the presence of the young victim. In both cases, it is the communication and intent, not the end-resulting contact, that the statute is addressing. State v. Whitmore, 46,120 (La.App. 2 Cir. 3/2/11), 58 So.3d 583, 589; State v. Williams, 11-79 (La.App. 5 Cir. 11/29/11), 80 So.3d 626, 632; State v. Suire, *341 09-150 (La.App. 3 Cir. 10/7/09), 19 So.3d 640, 643.
In State v. Suire, supra, the court found that, when the defendant sent textual communication with the intention of enticing the alleged minor child to masturbate, an activity undoubtedly falling into the category of “sexual conduct,” he committed computer-aided solicitation of a minor. Additionally, conversations regarding the defendant’s past sexual history, the size of his penis and the minor child’s experience with phone sex were all topics of a lewd and lascivious nature and provided sufficient evidence that the defendant committed computer-aided solicitation of a minor by engaging in communication defined as such in the first prong of the statute. Id.
In State v. Whitmore, supra, this court held that evidence that the defendant told an alleged 12-year-old girl that she should masturbate, engaged in detailed and explicit conversations with the minor child, and requested that the minor child meet him for sex was sufficient to support a conviction for computer-aided solicitation of a minor.
In State v. Williams, supra, the court found sufficient evidence to support a conviction for computer-aided solicitation of a minor where chat logs showed that the defendant used two online aliases to communicate with an [^alleged 14-year-old girl to persuade the minor child to engage in sexual intercourse and other sexual activities with him.
As outlined above, in order to sustain a conviction for computer-aided solicitation of a minor, the state must show that the defendant used electronic textual communication to “persuade, induce, entice, or coerce” the victim to engage in sexual conduct. In such case, the victim must be reasonably believed to be under the age of 17 and at least 2 years younger than the defendant. In the alternative, the defendant must use electronic textual communication with the intent to engage in sexual conduct in the presence of the victim. In that case, the victim must be reasonably believed to be under the age of 17.
Although Green asserts that there was no evidence presented that he was the individual who transmitted text messages to D.M., Det. Montgomery testified that he located the text messages, which were photographed and admitted as Exhibit S — 1, on the cell phone confiscated from Green at the time of his arrest. Those photographs show that a text message was sent from Green’s cell phone to D.M.’s cell phone on May 23, 2012, which read, “I want some head but I can’t get some from you.” The exchange which occurred immediately thereafter confirms the request for oral sex. It is clear that the sender of the message sought to engage the receiver of the message, a minor child, in sexual conduct. As in Whitmore, supra, a request that the minor child meet the adult to engage in sexual activities is sufficient to support a conviction of computer-aided solicitation of a minor. Furthermore, the conversation insinuating that D.M. could swim in front of Green without clothes and the need for a condom in case more than oral sex occurred were topics of a lewd and lascivious nature.
114Green argues that he was not in possession of his cell phone until approximately 5 p.m. on May 23, 2012. However, Exhibit S-l clearly shows that the conversation between Green’s cell phone and D.M.’s cell phone continued until 5:17 p.m., when he was arrested. At 5:10 p.m., Green received a message from D.M. that read, “u got a condom if I want more.” He responded with “do you?” and “I will keep that in mind.” At 5:12 p.m., Green instructed D.M. to meet him outside of the post office, “now plz.” He was then ar *342 rested directly across the street from the post office and the cell phone showing the above conversation was seized from his person.
Justin Green testified that he was 23 years old at the time of trial, making him 21 or 22 years old at the time of the .offense. D.M. testified that she was born on December 20, 1999, making her 12 years old at the time of the offense. Because of D.M.’s physical appearance, observed by the trial court, and her testimony that she often wore clothing displaying her grade level, it was reasonable for the trial court to conclude that Green knew that D.M. was under age 13. Additionally, screen shots of Green’s Facebook profile showed that he and D.M. had been present in the same location on at least one occasion, and that he communicated directly with D.M. on at least two occasions. D.M. testified that she met Green in 2012 and identified herself in a photograph with Green.
We conclude that there was sufficient circumstantial evidence for the court to reasonably conclude that Green was the individual who communicated with the purported D.M. on the date in question, and he should have reasonably known her age. It is clear that the communications were intended to induce a minor child to participate in sexual conduct. When viewing the totality of the | ^evidence, in the light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of the crime of computer-aided solicitation of a minor were proven beyond a reasonable doubt. Therefore, this assignment is without merit.
By his first assignment of error, Green urges that the court committed reversible error by not suppressing the evidence obtained from defendant’s cellular telephone without a warrant. He argues that the initial search of his cell phone, which yielded the serial number and information regarding the data card, was illegal because it was conducted without a search warrant. The defense asserts that the partial disas-sembly of Green’s cell phone was a search because, under U.S. v. Jones, — U.S. — , 132 S.Ct. 945, 181 L.Ed.2d 911 (2012), law enforcement physically “occupied Green’s private property” for the purpose of obtaining information, and that all evidence .obtained as a result of the war-rantless search should be suppressed. The state did not respond to this assignment of error.
In a hearing on a motion to suppress, the state bears the burden of establishing the admissibility of any evidence seized without a warrant. La. C. Cr. P. art. 703(D). The trial court’s denial of a motion to suppress is afforded great weight and will not be set aside unless a preponderance of the evidence clearly favors suppression. State v. White, 39,681 (La.App. 2 Cir. 5/11/05), 903 So.2d 580; State v. Normandin, 32,927 (La.App. 2 Cir. 12/22/99), 750 So.2d 321, writ denied, 00-0202 (La.9/29/00), 769 So.2d 550.
The right of every person to be secure in his person, house, papers and effects, against unreasonable searches and seizures, is • guaranteed by the Fourth Amendment to the United States Constitution and Article I, § 5 of the 1974 | ^Louisiana Constitution. Thus, a search and seizure of such shall only be made upon a warrant issued on probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the things to be seized. U.S. Const. Amend. IV; La. Const. Art. I, § 5 (1974); La. C. Cr. P. arts. 162-162.1; State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022. It is well settled that a search and seizure conducted without a warrant issued on probable cause is per se unreasonable unless the warrantless search and *343 seizure can be justified by one of the narrowly drawn exceptions to the warrant requirement. State v. Thompson, 2002-0333 (La.4/9/03), 842 So.2d 330; State v. Tatum, 466 So.2d 29 (La.1985); State v. Ledford, 40,318 (La.App. 2 Cir. 10/28/05), 914 So.2d 1168. The purpose of limiting warrantless searches to certain recognized exceptions is to preserve the constitutional safeguards provided by a warrant, while accommodating the necessity of warrant-less searches under special circumstances. State v. Thompson, supra.
The protections from unreasonable searches and seizures apply only if the defendant seeking to invoke them has a reasonable expectation of privacy in the place searched. To determine if a defendant has a reasonable expectation of privacy, a court must consider whether the defendant had an actual or subjective expectation of privacy and whether that expectation is of a type which society at large is prepared to recognize as being reasonable. State v. Ragsdale, 381 So.2d 492 (La.1980).
In U.S. v. Jones, supra, the supreme court held that the government’s installation of a GPS tracking device on a vehicle and its use of that device to monitor the vehicle’s movements constitutes a “search” under the Fourth 117Amendment. The court stated that the government had “physically occupied private property for the purpose of obtaining information.” The court did not focus on whether the defendant had a reasonable expectation of privacy in the object of the search. Instead, the court focused on whether there had been a common-law trespass, a “physical intrusion of a constitutionally protected area,” but stated that this test should be applied in addition to the reasonable expectation of privacy test.
Courts have recognized that an individual has a reasonable expectation of privacy in the electronic contents of a cell phone. U.S. v. Zavala, 541 F.3d 562 (5th Cir.2008) (stating that an individual has a reasonable expectation of privacy in the “wealth of private information” within a cell phone, including emails, text messages, call histories, address books, and subscriber numbers); U.S. v. Finley, All F.3d 250 (5th Cir.2007) (finding that defendant had a reasonable expectation of privacy in the call history and text messages on his cell phone); U.S. v. Quintana, 594 F.Supp.2d 1291 (M.D.Fla.2009) (stating that a cell phone owner has a reasonable expectation of privacy in the electronic data stored on the phone, thus, a search warrant is required to search the contents of a cell phone unless an exception to the warrant requirement exists); U.S. v. Davis, 787 F.Supp.2d 1165 (D.Or.2011) (stating that an individual has a reasonable expectation of privacy in his personal cell phone, including call records and text messages); State v. Bone, 107 So.3d 49 (La.App. 5 Cir. 9/11/12) (finding that the defendant had a reasonable expectation of privacy in the text messages sent and received on his cell phone). See also City of Ontario v. Quon, 560 U.S. 746, 130 S.Ct. 2619, 177 L.Ed.2d 216 (2010) (“Cell phone and text message communications are so pervasive that 11ssome persons may consider them to be essential means or necessary instruments for self-expression, even self-identification. That might strengthen the case for an expectation of privacy.”).
However, in U.S. v. Green, 2011 WL 86681 (D.Mass.2011), the court found that the defendant did not have a reasonable expectation of privacy in the International Mobile Subscriber Identifier (“IMSI”) numbers, which are analogous to serial numbers, associated with his cellphones. In that case, a government agent seized several cell phones from the defendant in a search of his person incident to his arrest. *344 Several weeks later, the agent removed the batteries from the cell phones to obtain and record the phones’ IMSI numbers. These numbers were then used to obtain toll and subscriber information associated with them. The defendant argued that the removal of the batteries to acquire the IMSI numbers amounted to a search for which a warrant was required. In denying the defendant’s motion to suppress, the court noted that the intrusion caused by the inspection was minimal as the agent did not turn the phones on, nor did he access the data stored in the phones, such as address books, text message histories, photographs, or emails. The court stated that there was “nothing wrong with an agent’s examining an item lawfully seized to determine its particular identifying number” and that it was insignificant that some manipulation of the device was necessary to get to the identifying number. Therefore, the court concluded that removal of the battery to acquire the IMSI numbers on a cell phone did not constitute a “search” for which a warrant was required. See also U.S. v. Rodriguez, 2012 WL 73008 (D.Minn.2012) (finding that officer’s removal of the back of the defendant’s cell phone to obtain the FCC ID number for use in a search warrant was not improper 11sbecause the phone was being held pursuant to a lawful arrest).
Green’s arrest was based on probable cause; thus, the contemporaneous seizure of his cell phone was also lawful. However, several days later, Officer Montgomery removed the back cover and the battery from Green’s cell phone to obtain the serial number and information about the data card for use in his application for a search warrant to search the contents of the cell phone. At the time, he obtained this information, Montgomery did not have Green’s consent to search the cell phone or a search warrant. Therefore, the issue in this case is whether Officer Montgomery’s actions constituted a “search” within the meaning of the Fourth Amendment for which a warrant is required.
Courts have acknowledged that there is a reasonable expectation of privacy in the electronic content stored on a cell phone, such as text messages, photographs, and address books. However, the serial number of a cell phone is distinguishable. Serial numbers merely serve to identify a particular phone and they do not contain any information relative to the electronic data that is actually stored on the cell phone. Therefore, it does not appear that Green had a reasonable expectation of privacy in the serial number of his cell phone or other identifying information.
In addition, Officer Montgomery’s intrusion into Green’s cell phone was minimal. Montgomery testified that prior to obtaining the search warrant, he did not turn the cell phone on nor did he seek to access any of the electronic data stored on the cell phone. The serial number did not provide Montgomery with any of Green’s personal information. Montgomery obtained and recorded the serial number for the exclusive purpose of identifying the cell phone to obtain a search warrant for its contents.
|2nTherefore, Officer Montgomery’s removal of the back of Green’s cell phone to obtain the serial number and other identifying information was not a “search” within the meaning of the Fourth Amendment. As such, Montgomery was not required to obtain a search warrant prior to retrieving this identifying information from Green’s cell phone. The evidence that Green is seeking to suppress was obtained through a lawful search of the contents of his cell phone performed after a search warrant was issued. This assignment is without merit.
*345 By his second assignment of error, the defendant contends that the trial coui't committed reversible error by admitting hearsay relied upon to convict the defendant. He argues that the Facebook records and text message transcript used in support of the charges of computer-aided solicitation of a minor were inadmissible hearsay. The defendant asserts that Det. Montgomery was aware of the proper procedure to obtain and authenticate records from Facebook, but did not use the correct procedure in this case. Further, the text message transcript, obtained using D.M.’s cell phone, was not properly authenticated.
In response, the state argues that the Facebook profile was obtained using D.M.’s Facebook account and was available to the public. The state notes that all objections for lack of foundation and hearsay were overruled by the trial court because Det. Montgomery established a proper foundation for all exhibits.
Hearsay is an oral or written assertion, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801(A)(1) and (C). Hearsay evidence is not admissible except as otherwise provided by the Code of Evidence or other legislation. La. C.E. art. 802. Hearsay is excluded because |2i the value of the statement rests on the credibility of the out-of-court asserter, who is not subject to cross-examination and other safeguards of reliability. State v. Lewis, 47,-853 (La.App. 2 Cir. 2/27/13), 110 So.3d 644, 653; State v. Martin, 458 So.2d 454 (La. 1984). Inadmissible hearsay which is merely cumulative or corroborative of other testimony adduced at trial is considered harmless. State v. Martin, 2013-0115 (La. App. 4 Cir. 12/4/13), 131 So.3d 121, 128. However, evidence is not hearsay, and thus is admissible, if it is introduced to show that the utterance occurred or that the conversation took place, rather than to show the truth of the matter asserted. State v. Lewis, supra; State v. Martin, supra, 131 So.3d at 128; State v. Drew, 360 So.2d 500, 518-19 (La.1978).
For example, when a law enforcement officer testifies concerning events leading to the arrest of a defendant, statements made to him by others during the course of the investigation are not hearsay, because they are not offered for the truth of the matter asserted, but merely to explain events leading to the arrest of the defendant. State v. Lewis, supra; State v. Grant, 41,745 (La.App. 2 Cir. 4/4/07), 954 So.2d 823; State v. Griffin, 568 So.2d 198 (La.App. 2 Cir.1990), writ denied, 592 So.2d 1330 (La.1992). Information received by a police officer can have both hearsay and non-hearsay elements. When admissibility is questioned, the court should balance the need of the evidence for the proper purpose against the danger of improper use of evidence by the jury. State v. Lewis, supra; State v. Wille, 559 So.2d 1321 (La.1990), cert, denied, 506 U.S. 880, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992).
The erroneous admission of hearsay evidence does not require reversal [22of the conviction when the error is harmless beyond a reasonable doubt. State v. Grant, supra. Rather, reversal is mandated only when there is a reasonable possibility that the hearsay evidence might have contributed to the verdict. Id. The Louisiana Supreme Court has long held that the admission of hearsay testimony is harmless error where the effect is merely cumulative or corroborative of other testimony adduced at trial. State v. Lewis, supra; State v. Johnson, 389 So.2d 1302 (La.1980); State v. McIntyre, 381 So.2d 408, 411 (La. 1980), cert, denied, 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 90 (1980).
*346 The defendant in this appeal contests the admission of Exhibit S-2, screen shots of the defendant’s purported Face-book account, and Exhibit S-B, a transcript of text messages retrieved from D.M.’s cell phone. However, the contested evidence was not introduced to show the truth of the communications, but to show that the communications took place. That the communications occurred is a necessary element of the crime of computer-aided solicitation of a minor.
Furthermore, the Facebook profile and transcript of text messages merely corroborated the trial testimony of Det. Montgomery and D.M. As to the photograph contained in the Facebook profile, D.M. testified that she was present at the park on the date asserted and that Green was also present. The photograph merely corroborated D.M.’s testimony that she had met Green prior to May 23, 2012. With regard to the transcript of text messages obtained from D.M.’s cell phone, these records merely corroborate Det. Montgomery’s testimony that he received the messages while in possession of D.M.’s cell phone.
| p-jEven if the contested evidence constituted erroneous admission of hearsay evidence, reversal is not required because the error was harmless. There was sufficient evidence to support a conviction without inclusion of the Facebook profile or transcript of text messages from D.M.’s cell phone. D.M. testified that she knew Green prior to May 28, 2012, and that she often wore shirts displaying her grade level in his presence. Further, Det. Montgomery testified that the cell phone seized from Green contained text messages regarding a meeting and sexual activity. Because the contested evidence was not relied upon to support Green’s conviction for computer-aided solicitation of a minor, its admission could be considered to be harmless error.
Accordingly, this assignment is without merit.
CONCLUSION
For the foregoing reasons, the conviction and sentence of the defendant are affirmed.
CONVICTION AND SENTENCE AFFIRMED.

. Cellebrite is a privately held company, established in 1999. It manufactures various data extraction, transfer and analysis devices for cellular phones and mobile devices. Cel-lebrite’s second division, Cellebrite Mobile Forensics, was established in 2007 and produces software and hardware for mobile forensic purposes used by federal, state, and local law enforcement; intelligence agencies; military branches; corporate security and investigations; law firms; and private digital forensic examiners.