Judgment rendered September 27, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,311-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                     Appellee

versus

CHRISTOPHER GLENN                      Appellant
HEARNE

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 12-F-0034

Honorable Larry Donnell Jefferson, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Peggy J. Sullivan

ROBERT STEVEN TEW                      Counsel for Appellee
District Attorney

HOLLY JONES
Assistant District Attorney

* * * * *

Before COX, ROBINSON, and MARCOTTE, JJ.

**ROBINSON, J.**

In this out-of-time appeal, Christopher Hearne appeals his 2015 conviction by a unanimous jury of aggravated burglary. We affirm his conviction, habitual offender adjudication, and sentence.

**FACTS**

Near midnight on January 3, 2012, Hearne entered the Monroe home of Carl McMillian by kicking in a side door. McMillian awoke to find Hearne standing in his bedroom. Hearne had already removed a jewelry armoire from McMillian's home that night before reentering the home. McMillian was able to hold Hearne at gunpoint and call for the police. A search of Hearne after he was taken into custody revealed that he had a pocketknife in his pants pocket at the time of the burglary.

On January 20, 2012, Hearne was charged by bill of information with one count of aggravated burglary, with the dangerous weapon being a knife belonging to Carl McMillian. On April 28, 2015, Hearne was charged by an amended bill of information with one count of aggravated burglary, with the dangerous weapon being a knife.

*Trial*

A jury trial was held in this matter in May of 2015. After the jury was chosen and sworn, the trial court asked the clerk to read the bill of information. The following exchange next occurred:

> BY THE CLERK: "All four, right?"
> BY [THE ADA]: No.
> BY THE COURT: No
> BY [DEFENSE COUNSEL]: Just one.
> BY THE COURT: Just –
> BY THE CLERK: Just the amended?
> BY THE COURT: Just amended, the aggravated battery.

After the clerk read the amended bill of information charging Hearne with one count of aggravated burglary, defense counsel asked for the jurors to be removed from the courtroom before moving for a mistrial on the grounds that the clerk's question about "all four" charges prejudiced the jury because the jurors knew that Hearne had other matters pending. The motion was denied.

McMillian testified that he was 76 years old at the time of trial. He lived with his wife in a 4,000 square-foot ranch-style home in Monroe. On January 3, 2012, he had returned home alone from Jackson, Mississippi after going there with his wife to visit a relative in the hospital. Just before midnight, he was awakened by his cat scratching his legs. As McMillian swung his legs out of the bed to stand up, his bedroom light came on and he saw Hearne standing at the foot of the bed, about three to five feet away. A frightened McMillian asked Hearne who he was and how he got in there. Hearne replied that "the man at the boat let him in." McMillian had a boat parked near his garage.

McMillian thought Hearne smelled of alcohol, so he asked Hearne if he had been drinking. Hearne answered in the affirmative, and stated that he had consumed a couple of beers. McMillian recalled that Hearne did not appear to be excessively intoxicated. Hearne had no problem standing, and McMillian did not remember his speech being slurred.

When Hearne moved to pull out from his pocket what turned out to be his driver's license, McMillian stepped back and reached for his handgun that he kept in an open nightstand drawer. He pointed the gun at Hearne and ejected a bullet into the chamber. While still pointing the gun at Hearne, McMillian then called 9-1-1 from his cellphone.

2

McMillian wanted to put his pants on before he walked Hearne to the foyer of the house to let the police in, so he told Hearne what he wanted to do and that he did not want to hurt Hearne, but would if necessary. After getting dressed, he directed Hearne out of the bedroom and down the hall at gunpoint. As they approached the home's foyer, they were met by Monroe Police Department ("MPD") officers responding to the call. After Hearne was arrested, McMillian went outside to identify a jewelry armoire in Hearne's vehicle that had been taken from his home. The drawers had been removed from the armoire and were also in the vehicle.

McMillian testified that he was scared of Hearne until the police arrived. He described the experience as being very frightening, and he felt threatened by Hearne's presence in his bedroom. Hearne never produced any weapon before McMillian, cursed him, or tried to physically attack him. Hearne also never tried to flee from him.

Todd Webb was a MPD patrol officer who responded to the dispatch of a burglary in progress. He testified that he and another officer entered the home through a door that was slightly open. The casing where the door jamb and lock met was slightly cracked, which indicated a forced entry. Webb testified that his search of Hearne revealed a folding pocketknife in his front pants pocket. The knife had an approximately three-inch blade, and the knife was close to an inch wide at its base.

After Hearne was removed from McMillian's house, Webb asked Hearne if a SUV parked in the driveway belonged to him. Hearne said it was his vehicle, and he consented to a search of it. A jewelry armoire from the house was found in the rear of Hearne's SUV. Drawers from the jewelry armoire were on the backseat. Webb acknowledged that he knows a few

3

people who carry knives for hunting, and that he carried a pocketknife when he was younger.

Aimee Ainsworth was in a relationship for 13 years with Hearne and had three children with him. She testified that Hearne carried a pocketknife all of the time. She had witnessed him using it to cut fishing line, pick under his fingernails, cut food, and even to pick food from his teeth.

Hearne testified on his own behalf. He admitted to having a knife on him in his front pants pocket, and agreed that it was the knife admitted into evidence. While he acknowledged the knife could be used to stab someone, he also maintained that he was not trying to harm McMillian. He explained that he carried a pocketknife because it was a tool that he used for everything, including in his work as a painter.

On May 15, 2015, Hearne was found guilty as charged by a unanimous jury. Two months later, Hearne was charged with being a third-felony habitual offender. Hearne subsequently pled guilty to being a third-felony offender and was sentenced to 20 years at hard labor without benefit of probation or suspension of sentence, with credit for time served. Regarding his parole eligibility, the Assistant District Attorney noted that while Hearne was "technically" eligible for parole, she believed that he would not be able to receive parole based on his number of convictions and that it would be a "day for day" sentence. Defense counsel then added that it would be a determination left up to the Department of Corrections.

***Post-trial proceedings***

No appeal of Hearne's conviction was ever filed. In 2017 and in 2018, Hearne filed *pro se* motions for production of trial and sentencing

4

transcripts.  In his motions, he alleged ineffective assistance of counsel. Both motions were granted.

On June 28, 2021, Hearne filed a *pro se* motion to correct an illegal sentence.  Hearne contended in his motion that he was denied an unbiased jury because the jurors were told about other pending charges.  Hearne asked that his conviction and sentence be vacated.

On August 16, 2021, Hearne filed an application for postconviction relief.  He claimed that he had not received the transcript from the denial of his motion for a mistrial.  He also argued that: (1) he was denied his right to a fair trial in front of an unbiased jury after the clerk mentioned the other pending charges; (2) his trial counsel misadvised him about his parole eligibility before he pled guilty to the habitual offender charge; (3) he was denied a right to a complete defense at trial because he was not allowed to discuss what "armed" really meant; and (4) his trial counsel never applied for a writ concerning the denial of his motion for a mistrial.

On October 10, 2022, Hearne was granted an out-of-time appeal.  The next day, Hearne filed a motion to appeal.  The Louisiana Appellate Project was appointed to represent him.

## DISCUSSION

### *Sufficiency of the evidence*

Hearne argues that the evidence was insufficient to support a guilty verdict on the aggravated burglary charge because he was not "armed" at the time of the burglary just because he had a pocketknife in his pants pocket. He maintains that he was guilty only of simple burglary of an inhabited dwelling.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Dotie*, 43,819 (La. App. 2 Cir. 1/14/09), 1 So. 3d 833, *writ denied*, 09-0310 (La. 11/6/09), 21 So. 3d 297.

The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d 62 (2000). The appellate court does not assess credibility or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442; *State v. Green*, 49,741 (La. App. 2 Cir. 4/15/15), 164 So. 3d 331. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Jackson*, 53,497 (La. App. 2 Cir. 5/20/20), 296 So. 3d 1156.

At the time that the burglary was committed, La. R.S. 14:60 defined the crime of "aggravated burglary" as:

> Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
> (1) Is armed with a dangerous weapon; or

6

(2) After entering arms himself with a dangerous weapon; or
(3) Commits a battery upon any person while in such place, or in entering or leaving such place.

Whoever commits the crime of aggravated burglary shall be imprisoned at hard labor for not less than one nor more than thirty years.

A dangerous weapon "includes any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm." La. R.S. 14:2(A)(3).

The State and defense counsel agreed to remove any definition of "armed" from the jury instructions.

In order to place the use of "armed" as an aggravating factor in its proper context, Hearne draws a comparison to the differences in penalties between simple burglary of an inhabited dwelling and aggravated burglary, and between simple robbery and armed robbery. Hearne argues that the statutory scheme is to deter the use of truly dangerous instrumentalities, not mere possession of them. Hearne emphasizes that his pocketknife's blade measured only three inches in length, the knife had a base measuring less than an inch, and that he never brandished the knife, mentioned it to McMillian, or referred to it in any way.

We note that armed robbery is defined as the "taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, *while armed with a dangerous weapon*." La. R.S. 14:64. Emphasis added. In affirming an armed robbery conviction, the Fifth Circuit concluded in *State v. Rodney*, 19-195, pp. 6-7 (La. App. 5 Cir. 10/23/19), 282 So. 3d 395, 401, that "no weapon need ever be seen by the victim, or witnesses, or recovered by the

7

police for the trier of fact to be justified in finding that the defendant was armed with a dangerous weapon."

Despite Hearne's contentions to the contrary, a burglar only needs to have a dangerous weapon in his possession in order to be considered "armed" for purposes of La. R.S. 14:60. It is not required that the burglar use it or brandish it during the commission of the offense.

In *State ex rel. B.A.A.*, 44,494 (La. App. 2 Cir. 5/20/09), 13 So. 3d 1183, the juvenile defendant was adjudicated a delinquent on a charge of attempted aggravated burglary after he threw a rock through a home window and tried to open it before being confronted by the resident. During a search of the juvenile, an officer felt an object in his pocket. The juvenile told the officer that the object was a gun.

On appeal, the juvenile argued that the evidence was insufficient to support a finding that he was armed with a dangerous weapon because the gun was not used, referred to, or even known by the victim to be in existence during the commission of the offense. Rejecting that argument, this Court stated:

> [T]he statute defining aggravated burglary does not require that the dangerous weapon be used; the statute merely requires the defendant to have been "armed with a dangerous weapon" while committing a burglary. In this case, the uncontroverted testimony of the police officers established that the defendant possessed a loaded revolver at the time of the offense.

*Id*. at p. 7, 13 So. 3d at 1188.

In *State v. Haley*, 38,258 (La. App. 2 Cir. 4/22/04), 873 So. 2d 747, *writ denied*, 04-2606 (La. 6/24/05), 904 So. 2d 728, this Court concluded that stealing a weapon during a home burglary committed by Haley and two other men satisfied the "arms himself" element of aggravated burglary.

8

After Haley and his cohorts were arrested following a vehicle chase, weapons were found in the trunk of their vehicle. One of the residents of the burglarized home identified his weapons in photos taken of the items seized from the trunk.

In *State v. Lazaro*, 2012-134 (La. App. 3 Cir. 11/7/12), 125 So. 3d 1134, the appellate court concluded that there was sufficient evidence to support a finding that Lazaro armed himself with a dangerous weapon at some point after entering the home. The evidence included testimony that three handguns were missing from the home, Lazaro's admission to taking a handgun and putting it in a backpack, and a detective's testimony that two handguns were located in two backpacks that were recovered. The court in *Lazaro* also rejected Lazaro's argument that he did not arm himself until the stolen gun was removed from his backpack. The court noted that Lazaro admitted stealing at least one handgun while inside the home and putting it in his backpack, where it was accessible enough for Lazaro to use it while fleeing the home and firing at the resident who was outside his home at the time.

The evidence presented at trial established the elements of aggravated burglary. Hearne was armed during the burglary within the meaning of La. R.S. 14:60. His claim of insufficient evidence is without merit.

### *Motion for a mistrial*

Hearne argues that the trial court erred in denying his motion for a mistrial. He contends the clerk made a clear reference to other cases or charges in violation of La. C. Cr. P. art. 770. Those other charges were dismissed when Hearne pled guilty to being a third-felony habitual offender.

9

Hearne also contends that the trial court's response to the clerk's question only compounded the problem.

"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to . . . [a]nother crime committed or alleged to have been committed by the defendant as to which evidence is not admissible[.]" La. C. Cr. P. art. 770(2).

A comment must not "arguably" point to a prior crime; to trigger mandatory mistrial pursuant to Article 770(2), the remark must "unmistakably" point to evidence of another crime. *State v. Edwards*, 97-1797 (La. 7/2/99), 750 So. 2d 893.

There was no unmistakable reference to evidence of another crime in this matter when the clerk asked, "All four, right?" No pending charges were mentioned. It was merely a vague and innocuous question before the jurors had heard any evidence, and certainly not one which prejudiced the jury and deprived Hearne of a fair trial. The trial court did not err in denying his motion for a mistrial.

## CONCLUSION

For the foregoing reasons, Hearne's aggravated burglary conviction, habitual offender adjudication, and sentence are AFFIRMED.

**AFFIRMED.**