Judgment rendered August 27, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,378-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

TERRANCE FELIX, JR.                          Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 385,727

Honorable Michael A. Pitman, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Peggy J. Sullivan

JAMES E. STEWART, SR.                     Counsel for Appellee
District Attorney

TOMMY JAN JOHNSON
KODIE K. SMITH
Assistant District Attorneys

* * * * *

Before STONE, COX, and ROBINSON, JJ.

**STONE, J.**

Terrance Felix, Jr. ("Felix") and his co defendants, Jonathan Crenshaw ("Crenshaw") and Tamala Ware ("Ware"), were indicted for the second degree murder of Derrick Terrell ("Terrell") on December 18, 2019. The state successfully had Ware severed from the original indictment, on October 7, 2021, (after a hearing), and later called as a witness for its case-in-chief. Thereafter, Felix and Crenshaw were tried together under the same docket number, although under separate indictments.[1]

A jury trial commenced for Felix and his co defendant, Crenshaw, for the second-degree murder of Terrell on December 13, 2023. At the end of trial, the jury unanimously convicted Felix, and he was subsequently sentenced to life imprisonment without the benefit of probation, parole, or suspension of sentence. Felix appeals, asserting that the evidence was insufficient to prove his guilt beyond a reasonable doubt of the murder of Terrell.

## FACTS

In August of 2019, Terrell arrived at the Knights Inn Motel ("motel") on Monkhouse Drive in Shreveport to see Ware, a woman with whom he was having an affair.[2] Ware had been living at the motel two months prior to the day of the murder. Felix and Crenshaw were at the motel visiting with Ware in her room when Terrell arrived on the premises. Upon his arrival, Ware went downstairs to meet Terrell in the parking lot at his SUV. Terrell and Ware exchanged words, and Terrell began to assault Ware by striking

---

[1] The indictment for this case is not signed by the grand jury foreperson as required by La. C. Cr. P. art. 383. However, the original indictment before the cases were severed was in proper form with the required signatures.

[2] Terrell was married to Christy Terrell.

her across the face.  Felix and Crenshaw witnessed the altercation, armed themselves, and rushed downstairs to intercede.  Felix and Crenshaw chased Terrell through the motel grounds.

Motel surveillance cameras captured Crenshaw stopping his pursuit and heading back toward the motel parking lot.  Felix, however, — shown wearing a white tank top — continued to run after Terrell, and caught up to him when Terrell fell near the motel swimming pool.  Felix then stood over Terrell, shooting him several times, killing him.  After the shooting, Felix fled the scene in his brown pickup truck.  Surveillance video also shows an unidentified subject getting into Terrell's SUV and exiting the parking lot behind Felix's brown pickup truck.  The SUV was later discovered burned.

An investigation by the Shreveport Police Department ("SPD") resulted in the arrest of Felix and Crenshaw for Terrell's murder.  The events leading up to the murder — and the murder itself — were witnessed by Ware, James Farrar ("Farrar") and Emanuel Barrett ("Barrett"), all of whom testified at trial.

The first witness to testify was Farrar, who was also a resident at the motel.  He testified that he saw Felix run past him chasing Terrell and then run back past him again after shooting Terrell.  Farrar recovered Felix's cell phone, which fell from his pocket during his pursuit of Terrell and was crucial to initially identifying him.  Upon Felix's arrest, he had flash burn injuries on his arm and burn cream in his backpack.  Felix's backpack was recovered in Ware's daughter's apartment, where Ware was arrested days after the shooting.

The next witness to testify was Ware, who was also charged with the second degree murder of Terrell.[3] She testified that Terrell drove into the parking lot of the motel in his white SUV that evening to meet up with her. Ware testified that an argument ensued between her and Terrell when he learned that Felix and Crenshaw were in her room. She stated that Terrell struck her hard, causing her to have a momentary loss of consciousness. She stated her next recollection was that of seeing Terrell start running with Felix and Crenshaw running behind him with guns in hand. She testified that she remained hidden behind Terrell's SUV and did not recall hearing any gunshots at that point. Ware then testified that she witnessed Felix standing over Terrell and shooting him. Evidence was presented at trial that showed Ware was familiar with Felix; she identified him in photo lineups and at trial and testified that he is the same individual she saw chasing and shooting Terrell.

The last witness was Barrett — described by SPD as a "prolific" confidential informant (to SPD) with an extensive criminal history and charges pending at the time — who testified to witnessing the sequence of events that led to Terrell's murder. Barrett was also a resident at the motel and testified that Crenshaw and Ware were seen together at the motel earlier in the day. Barrett also testified that he witnessed Felix's arrival at the motel later. According to Barrett, Felix was wearing a white tank-top muscle shirt. He testified that he noticed Felix and Crenshaw on the third-floor balcony in front of Ware's room and was able to clearly see Felix's face at that point as

---

[3] She initially told police that she did not know who the shooters were. However, her involvement in the shooting prompted the state to also charge her with the murder of Terrell. Ware testified as to her pending charges and other unrelated charges before the jury. She testified that she was not promised anything by the state in exchange for her testimony and had no expectations of a benefit from her cooperation.

Felix was not wearing a mask. Barrett testified that he saw the physical altercation between Terrell and Ware that led to Felix and Crenshaw's immediate foot chase and the firing of shots at Terrell. Barrett ran to his room for cover during the actual shooting. After about 10 minutes, he went outside to find Terrell deceased. Barrett initially identified Crenshaw to the police as the shooter and was able to pick Felix out of a photo lineup.

Barrett executed an affidavit in which he stated that he did not see Crenshaw at the motel. However, at trial, Barrett admitted that the affidavit was false and testified that he was coerced into signing it after being "mistakenly" placed in a holding cell with Crenshaw. According to Barrett, while he was in the cell, a guard called out his name, prompting Crenshaw to inquire if his name was Emanuel Barrett. When Barrett asked "Why?," Crenshaw explained, "Because you're in my paperwork." As the interaction was witnessed by his fellow inmates, Barrett testified that he felt compelled to comply with executing the affidavit.

SPD investigators testified to taking numerous photographs and collecting evidence at the crime scene — which included projectiles, soda cans, cigarette butts, and DNA swabs — all of which were consistent with both Felix and Crenshaw's presence at the motel on the day of the murder. The evidence also included two sets of shell casings (from two different weapons) that left a trail throughout the motel parking lot and accumulated around Terrell's body.

Following a three-day trial, a jury unanimously convicted Felix and Crenshaw of the second degree murder of Terrell, and they were sentenced to life imprisonment at hard labor without benefits. Felix now appeals his

4

conviction, asserting that the evidence was insufficient to identify him as the shooter.

## DISCUSSION

In his sole assignment of error, Felix asserts that he was not properly identified as the individual who shot and killed Terrell. Felix argues that his identification as the shooter was based primarily on the description of the shooter's clothing. He also points out the inconsistencies in the witnesses' testimony and argues that neither Barrett nor Ware provided credible testimony due to their different and multiple versions of the events.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 05/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Ladell*, 52,847 (La. App. 2 Cir. 9/25/19), 280 So.3d 932. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the factfinder. *State v. Pigford*, 05-0477 (La. 02/22/06), 922 So. 2d 517.

The appellate court does not assess credibility or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442; *State v. Green*, 49,741 (La. App. 2 Cir. 04/15/15), 164 So. 3d 331. The trier of fact is charged with weighing the credibility of this evidence and, on review, the same standard as in *Jackson, supra* is applied, giving great deference to the factfinder's conclusions. *Green, supra.*

5

Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *Green*, *supra; State v. Glover*, 47,311 (La. App. 2 Cir. 10/10/12), 106 So. 3d 129, *writ denied*, 12-2667 (La. 05/24/13), 116 So. 3d 659. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence. *State v. Larkins*, 51,540 (La. App. 2 Cir. 09/27/17), 243 So. 3d 1220, *writ denied*, 17-1900 (La. 09/28/18), 253 So. 3d 154. A reviewing court accords great deference to the trier of fact's decision to accept or reject the testimony of a witness in whole or in part. *State v. Jackson*, 53,497 (La. App. 2 Cir. 5/20/20), 296 So. 3d 1156. In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. Burd,* 40,480 (La. App. 2 Cir. 1/27/06), 921 So. 2d 219, *writ denied*, 06-1083 (La. 11/9/06), 941 So. 2d 35; *State v. Anderson*, 55,168 (La. App. 2 Cir. 9/27/23); 372 So. 3d 413, *writ denied*, 2023-01427 (La. 4/9/24); 382 So. 3d 842, and *writ denied*, 2023-01446 (La. 4/9/24); 382 So. 3d 844, and *cert. denied*, 145 S. Ct. 296 (2024).

Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R. S. 14:30.1 (A) (1). Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed consequences to follow his act or failure to act. La. R.S. 14:10 (1). Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. *State v. Walker*, 53,975 (La. App.

6

2 Cir. 6/30/21), 321 So. 3d 1154, *writ denied*, 21-01334 (La. 11/23/21), 328 So. 3d 83.

We find that the evidence was more than sufficient for a rational trier of fact to convict Felix of the second degree murder of Terrell. Several witnesses identified Felix as one of two individuals who chased Terrell and fired weapons at him across the motel grounds. DNA evidence was presented at trial, which confirms Felix was present at the motel on the day of the incident. Moreover, each witness identified Felix as the shooter who stood over and fired several shots at Terrell while he was on the ground. The fact that Felix was selected in a photo lineup by the witnesses as the perpetrator is further evidence of sufficiency. Surveillance footage also captured the events of the evening and corroborates eyewitness testimony. Felix contends that the shooter wore a mask, and he could not be positively identified by either video or witness. Felix's argument fails to recall and acknowledge that the shooter dropped his cell phone and his ID during the pursuit of Terrell — which was pivotal in identifying him.

Felix's contention that the witnesses were unreliable is immaterial, as it is improper for this court to disturb the unanimous jury determination. The jury was able to accept or reject the witnesses' identification of Felix from the evidence presented, including the motel surveillance footage and still pictures taken therefrom.

Given the copious amount of evidence presented by the state and the apparent credibility determinations made by the jury, a rational trier of fact viewing the evidence in the light most favorable to the prosecution could have found Felix guilty beyond a reasonable doubt of second degree murder. This assignment is without merit.

7

**ERROR PATENT**

A review of the record reveals an error patent. The trial court failed to properly advise Felix of his rights under La. C. Cr. P. art. 930.8. Felix is hereby advised that no application for postconviction relief shall be considered if filed more than two years after the judgment of conviction and sentence has become final. *State v. Jones*, 56,042 (La. App. 2 Cir. 12/18/24); 403 So. 3d 659, *writ denied*, 25-00020 (La. 2/25/25); 401 So. 3d 665.

**CONCLUSION**

For the foregoing reasons, Terrance Felix, Jr.'s conviction and sentence are affirmed.

**AFFIRMED.**