PITMAN, J.
Defendant Anthony Lemarcus Larkins was charged with one count of aggravated rape in violation of La. R.S. 14:42. After a bench trial, he was found guilty as charged and sentenced to life imprisonment without the benefit of probation, parole or suspension of sentence. He filed a pro se motion to reconsider sentence, which was not ruled on by the trial court. On appeal, Defendant challenges the sufficiency of the evidence and argues that the case must be remanded to the trial court to rule upon the outstanding motion to reconsider sentence. For the following reasons, Defendant's conviction and sentence are affirmed, and the matter is remanded to the trial court for sex offender registration notification.
FACTS
On October 17, 2013, Defendant was indicted by a grand jury for the aggravated rape of D.W. in 2003. At arraignment, he pled not guilty and elected to have a bench trial. He also chose to represent himself.
The first witness at trial was D.W., who testified that he was born on January 15, 1997, and currently lives in Shreveport, Louisiana, with his mother and two sisters. He stated that he, his mother and his sister previously lived with his great-grandparents in Shreveport from the time he was in preschool until about first or second grade. While they were living there, Defendant began dating his mother. D.W., his mother and his sister moved in with Defendant and his son in 2003.
D.W. further testified that his mother worked the night shift at Wal-Mart, and Defendant or D.W.'s great-grandparents would watch him and his sister while their mother worked. He stated that when Defendant *1222 was watching them, Defendant would take him into the master bedroom and force him to perform oral sex on him. He noted that he was in the second or third grade at that time and that his sister was present on at least two occasions. He further stated that Defendant also forced him and his sister to remove their clothes and touch each other's private parts while he watched.
According to D.W., he eventually told his aunt about Defendant's conduct, and she called Child Protective Services ("CPS"). After his aunt contacted CPS, he briefly lived with his aunt in Shreveport, while his mother and sister moved into an apartment. He stated that after living with his aunt for one year, he moved to Georgia with his mother, his sister and his newborn sister, where they resided for approximately 2½ years. He testified that his family returned to Shreveport when he was age 10 or 11 and lived with his mother's friend, Keshia Prim. Defendant frequently visited the family at Prim's home, and D.W., his mother and his sisters moved back in with him a year later.
D.W.'s sister (whose initials are also D.W.) testified that shortly after her family moved into Defendant's home in 2003, Defendant called her and her brother into the master bedroom and twice forced her to watch D.W. perform oral sex on him. She noted that the incidents generally occurred at night when their mother was at work. She further stated that on at least one occasion, Defendant forced her and D.W. to remove their clothes and attempted to force them to have sex with each other in the living room. She testified, "I was laying on the floor, and he [Defendant] made [D.W.] get on top of me and try to put his private part in me. And if we didn't do it, [Defendant] would whoop us." She further testified that she told her mother of the incident, but she could not recall her mother's response. After the incident, she, D.W. and her mother first moved to the Villa del Lago apartments and then relocated to Georgia.
D.W.'s sister corroborated his testimony that upon returning to Shreveport several years later, the family lived with a friend for a brief period, but eventually moved back in with Defendant. She stated that, while living with him, Defendant choked her and then offered her money in exchange for sex. She testified that she initially resisted his repeated advances, but ultimately agreed to have sex with him. D.W.'s sister noted she was 15 years old when she and Defendant first had sex, and they engaged in vaginal sexual intercourse approximately two or three times a month. The encounters occurred either in her room or her mother's room and always when her mother was at work. She testified that her mother, K.W., discovered she and Defendant were having sex after reading text messages between her and her boyfriend, "Trey," which detailed her sexual encounters with Defendant. After reading the text messages, K.W. called the police and CPS.
K.W. testified that she has three children, D.W. and her older daughter (who are not Defendant's biological children), and her younger daughter (who is Defendant's biological daughter). She stated that she met and began dating Defendant in 2002 while working at the Wal-Mart on Mansfield Road. She, D.W. and D.W.'s sister were living with her grandparents at that time. The three of them eventually moved in with Defendant, his mother and his son in 2003. She testified that Defendant and his mother would watch the children while she was working. She further noted that she got into an argument with Defendant because he was spanking her children; and, as a result, the three of them moved back into her grandparents' home in 2004. It was there that D.W. told *1223 her that Defendant forced him and his sister to engage in sexual activities either with each other or with Defendant. She stated that D.W. did not appear to understand that Defendant's behavior was inappropriate. She called CPS, but she did not know what happened with the investigation. She discovered she was pregnant with Defendant's child after reporting him to CPS. After she delivered the baby, she moved to Georgia with her children, where she lived for several years. She moved back to Shreveport, and Defendant moved into her house with her and her children.
K.W. further testified that Defendant had been living with her and the children for approximately eight months when she learned that he was paying her older daughter for sex. She stated that she confronted Defendant and began hitting him. She then locked herself in her car, called the police and remained there until the police arrived.
Sergeant Anthony Rei, a sex crimes investigator and officer with the Shreveport Police Department, testified that in 2007, he was assigned to conduct a follow-up investigation for the alleged crimes against D.W. and his sister in 2003. He stated that prior to his involvement, another officer had been assigned to investigate the allegations, but no action had been taken. He testified that he contacted K.W., via letter, informing her that he was following up on the 2003 investigation and asking her whether she was willing to pursue criminal charges. K.W. advised him that she did not want to pursue charges because she did not intend to return to Shreveport. Based on this response, he closed the case.
Corporal Stephen Desselle, a patrol officer with the Shreveport Police Department, testified that on August 12, 2013, he was dispatched to a residence at 3146 Pleasant Drive in response to an alleged sexual assault. Upon arriving at the home, he met K.W. in the front yard and took her statement. Based on that statement, he detained Defendant and placed him in the back seat of the patrol unit. After securing Defendant, he made contact with D.W.'s sister, who admitted that she had sexual intercourse with Defendant approximately ten times in exchange for money. He advised Defendant of his Miranda rights and interviewed him, but Defendant denied any knowledge of the crime. He stated that he contacted Det. Jeff Allday in the sex crimes unit and also CPS. He wrote a report and then turned the investigation over to Det. Allday.
Corporal Saiz, an officer with the Shreveport Police Department, who was also dispatched to 3146 Pleasant Drive on August 12, 2013, testified that he and a third officer spoke to D.W. at the scene. He stated that D.W. appeared nervous about speaking, but told the officers that when he was a child, Defendant would give him money and gifts in exchange for performing oral sex on him.
Finally, Det. Allday testified that he is an investigator in the Shreveport Police Department sex crimes unit and was assigned to the instant case on August 12, 2013. Upon arriving on scene, he spoke with Cpl. Desselle, who relayed D.W.'s sister's story to him. He stated that he transported D.W. and his sister to the Gingerbread House, where he interviewed them. Based on their statements, he obtained an arrest warrant for Defendant. He could not recall whether he was the arresting officer, but noted that he did not interview Defendant after his arrest because he believed he would continue to deny the charges.
On cross-examination, Det. Allday stated that he questioned K.W. on August 14, 2013, who stated that she did not remember the specific acts her children were forced to do for Defendant, but did remember that they were sexual in nature.
*1224 He recalled that K.W. stated that she had asked her youngest child, Defendant's biological daughter, whether Defendant had touched her private part, and the little girl responded that Defendant had made her touch his private part.
Following Det. Allday's testimony, the state rested. Defendant moved for a judgment of acquittal under La. C. Cr. P. art. 778, which was denied, and then rested his case without calling witnesses. On September 8, 2016, the trial court found him guilty as charged of the aggravated rape of D.W. On September 19, 2016, the trial court sentenced Defendant to life imprisonment without the benefit of probation, parole or suspension of sentence. He filed a pro se motion to reconsider sentence, which was not ruled on by the trial court.
The instant appeal followed.
DISCUSSION
Insufficiency of the evidence
Defendant argues there is insufficient evidence to support his aggravated rape conviction and to prove he is guilty beyond a reasonable doubt. He contends that the testimony from D.W., D.W.'s sister and K.W. is very inconsistent as to the nature of abuse D.W. suffered at his hands.
The state argues that there is ample direct evidence to support Defendant's conviction.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the case in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979) ; State v. Tate , 01-1658 (La. 5/20/03), 851 So.2d 921, cert. denied , 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004) ; State v. Carter , 42,894 (La. App. 2 Cir. 1/9/08), 974 So.2d 181, writ denied , 08-0499 (La. 11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford , 05-0477 (La. 2/22/06), 922 So.2d 517 ; State v. Dotie , 43,819 (La. App. 2 Cir. 1/14/09), 1 So.3d 833, writ denied , 09-0310 (La. 11/6/09), 21 So.3d 297.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in a light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Broome , 49,004 (La. App. 2 Cir. 4/9/14), 136 So.3d 979, writ denied , 14-0990 (La. 1/16/15), 157 So.3d 1127.
The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. A reviewing court may not impinge on the fact finder's discretion unless it is necessary to guarantee the fundamental due process of law. State v. Casey , 99-0023 (La. 1/26/00), 775 So.2d 1022, cert. denied , 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed. 2d 62 (2000). The appellate court does not assess credibility or reweigh the evidence. State v. Smith , 94-3116 (La. 10/16/95), 661 So.2d 442.
At the time of the offense, La. R.S. 14:42 provided in pertinent part:
A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim *1225 because it is committed under any one or more of the following circumstances.
...
(4) When the victim is under the age of thirteen years.[1] Lack of knowledge of the victim's age shall not be a defense.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness-if believed by the trier of fact-is sufficient support for a requisite factual conclusion. State v. Jones , 34,863 (La. App. 2 Cir. 8/22/01), 794 So.2d 107, writ denied , 01-2648 (La. 8/30/02), 823 So.2d 938. Such testimony alone is sufficient even where the state does not introduce medical, scientific or physical evidence. State v. Mickens , 31,737 (La. App. 2 Cir. 3/31/99), 731 So.2d 463, writ denied , 99-1078 (La. 9/24/99), 747 So.2d 1118.
The state is required to prove beyond a reasonable doubt that Defendant engaged in either anal, oral or vaginal intercourse without the lawful consent of the victim who was under the age of 13 at the time of the offense. La. R.S. 14:42(A)(4). We find that there is sufficient direct evidence to support Defendant's conviction.
D.W. and his sister testified that Defendant forced D.W. to perform oral sex on him multiple times and occasionally attempted to force the two children to have sex with each other. According to both witnesses, the events occurred in 2003, when D.W. was approximately five or six years old. While Defendant attempted to confuse the witnesses as to dates, locations and whom the victim's mother was dating between 2002 and 2013, it was clearly established that Defendant forced D.W. to perform oral sex on him on multiple occasions without D.W.'s lawful consent because D.W. was under the age of 13 during the incidents. All the witnesses testified that the events took place in Caddo Parish.
Ultimately, it was the trial court's decision as fact finder to assess the credibility of the witnesses. When stating its verdict of guilty, it made the following observations:
THE COURT: The Court listened to-in particular of interest to the Court were the two witnesses, [D.W. and his sister]. The Court notes that [D.W.] testified first. The Court found his testimony to be credible. The Court observed very carefully his demeanor on the stand. [D.W.] barely could look at Mr. Larkins; however, Mr. Larkins was smiling most of the time that he was looking at [D.W.]. That's not reflected in the record. That was the Court's observation. [D.W.] articulated in great detail the acts of which he was subjected to at the hands of Mr. Larkins.
[The sister] testified in detail about the things that [D.W.] was subjected to by Mr. Larkins. The Court found both of these very young witnesses to be very credible, reliable. Their demeanor on the stand was shame, embarrassment and great emotional pain.
The trial court listened to and determined the credibility of each witness. The trier of fact weighed the evidence and concluded there was proof beyond a reasonable doubt that Defendant had committed the crimes of which he was accused. Its decision will not be disturbed on appeal.
Therefore, this assignment of error is without merit.
*1226 Motion to Reconsider Sentence
Defendant argues that the trial court erred in failing to rule on his pro se motion to reconsider sentence, and the matter should be remanded for a ruling.
The state argues that remand is not necessary since Defendant is not challenging his sentence on appeal.
The trial court retains jurisdiction to rule on a motion to reconsider sentence, and a defendant is within his rights to provoke same, even after an order of appeal is entered. See La. C. Cr. P. arts. 881.1(C) and 916(3). In addition, no provision within the Code of Criminal Procedure prohibits an appellate court from reviewing a sentence for constitutional excessiveness in spite of the trial court's failure to rule on a motion to reconsider sentence. Should the trial court later rule upon a defendant's motion to reconsider sentence, he may seek appellate review of the decision pursuant to La. C. Cr. P. art. 914(B)(2) ; State v. Farris , 51,094 (La. App. 2 Cir. 12/14/16), 210 So.3d 877.
There is no indication in the record that the trial court ever ruled on Defendant's pro se motion to reconsider sentence filed on October 18, 2016. However, the absence of a ruling on a motion to reconsider sentence does not affect this court's ability to review the issues of sufficiency of the evidence and excessiveness of sentence. We have addressed Defendant's argument regarding sufficiency of the evidence in this opinion. He did not raise excessiveness of sentence on appeal.
This assignment of error lacks merit.
ERROR PATENT
A review of the record reveals that the trial judge did not properly inform Defendant of the sex offender registration and notification requirements outlined in La. R.S. 15:543. Aggravated rape is defined as a sex offense under La. R.S. 15:541. La. R.S. 15:543 requires that the district court notify a defendant convicted of a sex offense, in writing, of the registration and notification requirements and that an entry be made in the court minutes stating that the written notification was provided to the defendant.
There is nothing in the record to indicate Defendant is aware of the sex offender registration requirements for his crime. Therefore, this matter is remanded for the purpose of providing the appropriate written notice to Defendant of the sex offender registration requirements and for the filing of written proof of such notice into the proceeding's record. State v. Wilson , 50,418 (La. App. 2 Cir. 4/6/16), 189 So.3d 513, writ denied , 16-0793 (La. 4/13/17), 218 So.3d 629.
CONCLUSION
For the foregoing reasons, the conviction and sentence of Defendant Anthony Lemarcus Larkins are affirmed. Further, this matter is remanded with instructions to provide Defendant with appropriate written notice of his sex offender registration obligations in compliance with La. R.S. 15:542 -543.1 and for the filing of written proof thereof in the record.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.

The statute was amended in 2003 to change the victim's age from 12 to 13 years. It became effective in August 2003. The record does not reflect in which months the crime occurred, but this is inconsequential since D.W. was 5 years old in 2003.