Judgment rendered November 20, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 992,
La. C. Cr. P.

No. 53,046-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

CRAIG MILLER                                Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 355,791

Honorable Katherine Clark Dorroh, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Paula Corley Marx

JAMES E. STEWART, SR.                   Counsel for Appellee
District Attorney

RICHARD S. FEINBERG
JASON W. WALTMAN
NANCY F. BERGER-SCHNEIDER
Assistant District Attorneys

* * * * *

Before WILLIAMS, COX, and STEPHENS, JJ.

**STEPHENS, J.**

This criminal appeal arises from the First Judicial District Court, Caddo Parish, Louisiana. The defendant, Craig Miller, was found guilty of simple burglary following a jury trial and was sentenced to eight years at hard labor. This out of time appeal followed.[1] For the following reasons, Miller's conviction and sentence are affirmed.

**FACTS**

On March 19, 2018, Miller was charged by bill of information with the simple burglary of 905 Francais Drive, Shreveport, Louisiana, in violation of La. R.S. 14:62.[2] The offense was committed on February 18, 2018. In December 2018, a jury trial was held, and the following evidence was adduced.

Officer Cody Hyde, a patrol officer with the Shreveport Police Department ("SPD"), testified he was working patrol alone on February 18, 2018, when he received a dispatch call at approximately 11:00 p.m. regarding a suspicious person or possible burglary occurring at a business located at 905 Francais Drive, Shreveport, Louisiana. That business was identified as being the office of Royal Contractors. Officer Hyde testified he had been given the description of the suspect's vehicle as a maroon Pontiac. As related by Ofc. Hyde, while traveling southbound down Kingston Road en route to 905 Francais Drive, he observed a late model maroon vehicle he believed to be a Pontiac pull out of the parking lot of 905 Francais Drive.

---

[1] After sentencing, Miller filed a motion to reconsider sentence, and on January 17, 2019, the trial court denied that motion. On February 28, 2019, Miller filed a motion for an appeal, which the trial court granted the same day.

[2] On December 5, 2018, the state filed an amended bill of information changing the address where the burglary occurred from "Francis Drive" to "Francais Drive."

The vehicle passed him traveling northbound on Kingston.  Officer Hyde further observed that the vehicle was "loaded down with toolboxes and [had] metal sticking out of the trunk with the trunk open."

Officer Hyde described observing a "lifted" Ford truck behind the maroon vehicle.  He testified he turned behind the maroon vehicle and engaged his audio and visual signals to effect a traffic stop on the vehicle, which came to a stop.  Officer Hyde exited his patrol car, and the passenger exited the vehicle a few seconds later.   At trial, Ofc. Hyde identified Miller as the passenger in the vehicle.  According to Ofc. Hyde, Miller immediately began talking about the various items inside the car and said that the man in the lifted truck was following them.  Officer Hyde testified that he had the driver exit the vehicle, and he identified the driver as Michael Smith.

The motor vehicle surveillance video from Ofc. Hyde's vehicle was entered into evidence, and it depicted what Ofc. Hyde described in his testimony regarding the stop of the maroon vehicle.  On the video, the two suspects stated, "It was all in the dumpster."  Officer Hyde testified he placed Miller in the back of his patrol car, and another officer went to retrieve Drew Ratley, the owner of Royal Contractors.  Officer Hyde recounted Ratley had witnessed Miller and Smith's activities at the business.[3]

Officer Hyde testified that he had Ratley identify the items in the trunk of the maroon vehicle.  The items Ratley identified as belonging to him or his employees were three toolboxes, a DeWalt tool bag with an air gauge, rolls of painter plastic, multiple water jugs, scrap metal wire, and a

---

[3] Defense counsel incorrectly refers to Ratley as "Drew Ratcliff."

2

bag of tools. Ratley also identified additional stolen items on the video. On the video, Ratley stated all of the items had been located inside the business except the scrap wire and metal and several of the stolen items belonged to his employees. Officer Hyde then advised Miller and Smith of their *Miranda* rights and placed them under arrest.

Officer Hyde testified that Ratley produced personal identification and his truck was dark blue with a "Royal Contractors" vinyl decal wrapping the entirety of the truck. According to Ofc. Hyde, officers did not attempt to get fingerprints or DNA from the Royal Contractors building. At the scene, Ratley informed Ofc. Hyde there was no video surveillance at the business. Officer Hyde testified that he did not speak with Ratley's employees to determine if the tools were theirs, and he noted the toolboxes and tool bags did not have any identifying markings on them. Officer Hyde noted he was instructed by property crimes Detective Azlin to release to Ratley anything from the maroon vehicle he identified as belonging to him or his employees.

Ratley testified he was the owner of Royal Contractors located at 905 Francais Drive, Shreveport, and had worked in construction his "whole life." According to Ratley, there was an empty lot between Royal Contractors and Kingston Road. At approximately 10:30-11:00 p.m. on February 18, 2018, Ratley returned to Shreveport from South Bossier, where he had been hunting, to check on his business. As he approached Kingston Road and turned onto Francais Drive, he saw a car parked in the back of his business near the dumpster, and he knew the car did not belong to any of his employees. Ratley testified that he stopped immediately because he "knew that I was being robbed or something wasn't right." He turned off the lights on his truck, parked in the vacant lot next to his business and called 9-1-1.

3

At trial, Ratley described the scene of the burglary he witnessed. He stated there were two company Ford pickup trucks parked in front of the business. Ratley further described that there was a driveway running along the left side of the business which turned into a parking lot, and at the time of the offense, there was a dumpster located at the rear of the business. Ratley testified that there was no fence around the property, and there was a "no trespassing" sign on one of the mailboxes. According to Ratley, he saw a man making his way in and out of the back door of the building several times and saw another standing by the car "watching." He noted it was dark, and the only outside lighting was the city light—he could not identify either man. Ratley described the two men "loading their car up with all of our stuff." He asserted that the front of the car was parked directly at the dumpster, and he had a view of the vehicle's trunk, which was toward the door of the building. Ratley testified that while he was waiting for the police to arrive, the vehicle left the site, and he pursued it. Ratley related seeing the stolen items in the trunk of the car, which could not be closed because it was so full. Ratley testified that the car turned left on Kingston Road and the police arrived shortly thereafter. Ratley returned to his business.

According to Ratley, he immediately went inside through the door he had previously watched the man carrying items through. He noted the door was closed, but not locked. He also noticed marks inside the door jamb, but he had never paid attention to whether those marks were present prior to the burglary. Ratley confirmed that the only persons with keys to the building were him, his wife, and his brother. Upon entering the building, he immediately noticed some things were taken. Ratley testified that the police came to the building and asked him to accompany them to verify what was

4

stolen from the business and located in the vehicle Ratley had followed. Arriving where the vehicle had been stopped, Ratley described seeing, in the suspects' trunk, two bags of tools and various construction materials. He noted that two of the items had been located outside his building, but the remaining items had been located inside.

Ratley testified he was allowed to take the items belonging to him from the suspects' car, and he loaded them into his truck with the assistance of SPD officers. Ratley testified that the tools and other stolen items were either inside or outside the Royal Contractors building and specifically noted the items had not been placed in the dumpster by him or his employees.

Michael Dale Smith was called as a witness on behalf of Miller. Smith testified he had known Miller for about three years. According to Smith, Miller came to his house the night of February 18, 2018, and the two returned to Miller's mother's house to check on her vehicle, which was having mechanical difficulties. Smith testified he brought two bags of mechanic's tools with him to Miller's mother's home to work on her vehicle. Explaining why he had tools, Smith claimed he did mechanic work. He described the tool bags as a green and dark-colored bag and a DeWalt brand bag which was black and yellow. Smith stated that the tools in the tool bags included an impact driver, torque handle wrenches, sockets, wrenches, pry bars, and other "mechanic tools."

Smith testified he and Miller left the house around 11:00 p.m., and he had the tools in the trunk of his car. Smith claimed he and Miller stopped on Francais Street "at a place that had a dumpster out there" because he saw wood sticking out of the dumpster, which he wanted. Smith described getting items from other dumpsters in the past. Smith recalled that the

property did not have a fence around it, and he did not see any "no trespassing" signs posted. Smith testified he was driving a maroon Mitsubishi Eclipse that evening.

Smith related he "looked in the dumpster and [saw] what was in there, and I grabbed some wood out of there and some pieces of metal and a couple of toolboxes that had [broken] handles on them." He related removing other items from the dumpster and putting them on top of his tool bags already in the car. Smith claimed he did not take anything which was not in the dumpster, and he did not enter the building; moreover, according to Smith, he did not see Miller enter any structure or building.

As described by Smith, both he and Miller had climbed into the dumpster at the same time, and they got out of the dumpster by jumping. Smith related as he was leaving the vicinity of the dumpster, he noticed a man in a truck near the road on his cellphone, and when Miller got out to speak with the man, the man backed his truck up. Smith testified he did not know the person in the truck. According to Smith, the police stopped his car not long after he and Miller drove away from the dumpster, and when questioned by police, Smith testified he informed the police that the tools "in the bottom of the car" were his.

Smith agreed he did not have permission to be on the property at 905 Francais Drive. It was Smith's recollection the dumpster was at the side of the Royal Contractors building, and he had to drive on the private drive to access the dumpster. Smith testified he did not see anyone else around the building at 11:00 p.m., and he believed everything in the dumpster to be trash. Smith testified he could see Miller at all times during their time spent at 905 Francais Drive.

6

Miller elected not to testify in his own defense, and the defense rested. After deliberations, the jury found Miller guilty as charged. On December 12, 2018, Miller filed a motion for post-verdict judgment of acquittal, which was denied the same day. Miller waived the required sentencing delays, and the trial court sentenced him the same day. After considering the factors provided in La. C. Cr. P. art. 894.1, the trial court sentenced Miller to eight years at hard labor with credit for time served. On January 16, 2019, Miller filed a motion to reconsider sentence, which motion was denied on January 17, 2019. This appeal ensued.

## DISCUSSION

Miller brings only one assignment of error on appeal and argues there was no proof he entered the structure at 905 Francais Drive; thus the state failed to meet its burden of proof to support the verdict of simple burglary. Specifically, Miller maintains there is reasonable doubt he entered the structure at 905 Francais Drive with the intent to commit a felony or theft therein. Miller argues that Ratley testified he saw only one man coming out of the Royal Contractors building, and one standing at the car, but Ratley told police there were two men "around his business." Miller argues he was "dumpster diving" at 905 Francais Drive, but he did not go inside the business.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 2001-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905,

7

124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Bass*, 51,411 (La. App. 2 Cir. 6/21/17), 223 So. 3d 1242, *writ not cons.*, 2018-0296 (La. 4/16/18), 239 So. 3d 830. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 2005-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Turner*, 52,510 (La. App. 2 Cir. 4/10/19), 267 So. 3d 1202.

The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. *State v. Casey*, 1999-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d 62 (2000). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. Robinson*, 50,643 (La. App. 2 Cir. 6/22/16), 197 So. 3d 717, *writ denied*, 2016-1479 (La. 5/19/17), 221 So. 3d 78; *State v. Gullette*, 43,032 (La. App. 2 Cir. 2/13/08), 975 So. 2d 753. The appellate court does not assess credibility or reweigh the evidence. *State v. Smith*, 1994-3116 (La. 10/16/95), 661 So. 2d 442; *State v. Green*, 49,741 (La. App. 2 Cir. 4/15/15), 164 So. 3d 331.

Direct evidence provides proof of the existence of a fact, for example, a witness's testimony that he saw or heard something. *State v. Lilly*, 468 So. 2d 1154 (La. 1985); *State v. Turner*, *supra*. Circumstantial evidence provides proof of collateral facts and circumstances, from which the existence of the main fact may be inferred according to reason and common experience. *State v. Lilly, supra; State v. Turner, supra*. When the state relies on circumstantial evidence to establish the existence of an essential

element of a crime, the court must assume every fact that the evidence tends to prove and the circumstantial evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438; *State v. Lilly*, *supra*; *State v. Green*, *supra*.

The trier of fact is charged with weighing the credibility of this evidence and, on review, the same standard as in *Jackson v. Virginia* is applied, giving great deference to the fact finder's conclusions. *State v. Green*, *supra*. When the trier of fact reasonably rejects the hypothesis of innocence advanced by a defendant, the hypothesis fails, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. *State v. Sosa*, 2005-0213 (La. 1/19/06), 921 So. 2d 94; *State v. Matthews*, 50,838 (La. App. 2 Cir. 8/10/16), 200 So. 3d 895, *writ denied*, 2016-1678 (La. 6/5/17), 220 So. 3d 752.

Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Green*, *supra*; *State v. Glover*, 47,311 (La. App. 2 Cir. 10/10/12), 106 So. 3d 129, *writ denied*, 2012-2667 (La. 5/24/13), 116 So. 3d 659. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence. *State v. Larkins*, 51,540 (La. App. 2 Cir. 9/27/17), 243 So. 3d 1220, *writ denied*, 2017-1900 (La. 9/28/18), 253 So. 3d 154. The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness in whole or in part; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. *State v. Casey*, *supra*.

Louisiana R.S. 14:62 states:

A. Simple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony or any theft therein, other than as set forth in R.S. 14:60.

B. Whoever commits the crime of simple burglary shall be fined not more than two thousand dollars, imprisoned with or without hard labor for not more than twelve years, or both.

Further, as provided in La. R.S. 14:24, "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." To be guilty as a principal to a burglary, the offender need not personally enter the burglarized structure; rather, the state has to show that the offender was concerned in the commission of the crime, aided or abetted in its commission, or directly or indirectly counseled another to commit the crime as a principal. *State v. Jetton*, 32,893 (La. App. 2 Cir. 4/5/00), 756 So. 2d 1206, *writ denied*, 2000-1568 (La. 3/16/01), 787 So. 2d 299, citing *State v. Ortiz,* 1996-1609 (La. 10/21/97), 701 So. 2d 922, *cert. denied,* 524 U.S. 943, 118 S. Ct. 2352, 141 L. Ed. 2d 722 (1998).

Additionally, there is no requirement that a bill of indictment or information explicitly name the accused as "principal." That the accused is charged for the offense itself, and not charged as an accessory after the fact, irrefutably evidences that he is charged as a principal. *State v. Peterson,* 290 So. 2d 307 (La. 1974); *State v. Haley,* 38,258 (La. App. 2 Cir. 4/22/04), 873 So. 2d 747, *writ denied, State ex rel. Haley v. State,* 2004-2606 (La. 6/24/05), 904 So. 2d 728.

Ratley testified that neither Miller nor Smith had permission to be on the property at 905 Francais Drive. Ratley also testified he saw one of two men enter the building, and the other man stand watch. Ratley identified several items in Smith's car as belonging either to him or to his employees. The items had been located inside and outside the Royal Contractors building. Ratley testified he called 9-1-1, informed them of the burglary in progress and followed Smith's car until the police pulled Smith and Miller over.

Officer Hyde testified that Smith admitted he had been on the property, claiming he and Miller were retrieving items from the dumpster. Whereas Ratley testified he saw a man leaving his building carrying items, Smith testified he and Miller got items out of the dumpster, but did not enter the building at 905 Francais Drive. For purposes of convicting Miller of simple burglary, it does not matter whether Miller entered the building or simply served as a lookout—either way, he aided and abetted in the commission of the burglary. Moreover, the jury, which had the opportunity to observe the demeanor of the witnesses, was free to accept the testimony of Ofc. Hyde and Ratley and reject the testimony of Smith. On the record, that credibility determination does not appear unreasonable. Here, the evidence was sufficient to determine that Miller committed the crime of simple burglary.

## CONCLUSION

For the foregoing reasons, the conviction and sentence of Craig Miller are affirmed.

**AFFIRMED.**

11