Judgment rendered February 26, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,076-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

ERICK WILLIAMS                              Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 388,775

Honorable Christopher T. Victory, Judge

* * * * *

LOUISIANA APPELLATE PROJECT             Counsel for Appellant
By: Douglas Lee Harville

JAMES E. STEWART, SR.                   Counsel for Appellee
District Attorney

SAMUEL S. CRICHTON
TOMMY JAN JOHNSON
VICTORIA T. WASHINGTON
Assistant District Attorneys

* * * * *

Before STONE, COX, and STEPHENS, JJ.

**STONE, J.**

This appeal arises from the First Judicial District Court, the Honorable Chris Victory, presiding. On May 25, 2022, the defendant, Erick Williams ("Williams"), was charged by a four-count bill of information with third degree rape (in violation of La. R.S. 14:42), crimes against nature (in violation of La. R.S. 14:89), simple escape (in violation of La. R.S. 14:110), and resisting a police officer with force or violence (in violation of La. R.S. 14:108.2). Williams entered pleas of not guilty to all charges.

After his arrest, Williams filed a motion for discovery, and a subsequent investigation of the rape allegation was conducted. The court issued a protective order to conceal the identity of the victim from the public, pursuant to La. R.S. 46:1844(W).[1] The state responded to Williams' motion and supplemented discovery during pretrial proceedings. On May 28, 2022, the court conducted a preliminary examination wherein Detective David Karam ("Det. Karam"), a Shreveport Police Department sex crimes investigator, testified, revealing that S.D. was the 24-year-old biological daughter of Williams. Photos and a video were taken of Williams having intercourse with S.D. while she was unconscious. As a result of Det. Karam's investigation, the court found probable cause to hold Williams over for trial.

A jury returned a unanimous verdict of guilty as charged on all four counts on August 23, 2023. Williams' motions for a new trial and post-judgment verdict of acquittal were denied by the court. On November 8, 2023, Williams was sentenced to 45 years at hard labor on the third degree

---

[1] Hereinafter, the initials of the victim, S.D., are used.

rape conviction, to 10 years at hard labor on the crimes against nature conviction, to 8 years at hard labor on the simple escape conviction, and to 5 years at hard labor on the resisting a police officer by force or violence conviction. His sentences were ordered to be served consecutively without the benefits of probation, parole, or suspension of sentence. A motion to reconsider sentence was filed and denied. This appeal followed.

**FACTS**

On the day of the offenses, S.D. was celebrating her birthday with friends at the Windsor Apartments, where she lived with Angel Lee ("Angel"), her significant other. At trial, S.D. testified that she was drinking liquor and smoking marijuana and, at some point, became incapacitated. The last thing S.D. remembered was sitting on the couch in her apartment. Her next recollection occurred when she awoke in the hospital feeling hung over. After regaining consciousness, S.D. discovered that she had been raped. Earlier in the evening, S.D. recalled speaking with Angel — who was at work — on the phone after she had commenced drinking.

Angel testified that S.D. stopped answering phone calls after a while. After multiple attempts to call S.D., Williams answered the phone, which surprised Angel.[2] Angel stated the conversation seemed unusual after Williams informed her that S.D. was drunk. Hearing this, a concerned Angel then activated a FaceTime call so that she could see S.D. for herself. Angel observed S.D. lying face down on her bed wearing only a sports bra. Upon arriving home, Angel found S.D. on the couch, unresponsive and foaming at the mouth. Notably, Williams was not present. Angel testified

---

[2] S.D. identified Williams in court as her biological father, noting that she did not have a relationship with him.

2

that the apartment appeared to be ransacked as if someone had "robbed the place." The Shreveport Police and medical unit of the Shreveport Fire Department were summoned.

Shreveport Police Corporal Avery Williams ("Cpl. Williams") — no relation to the defendant — arrived at the apartment where he saw S.D. being taken away by gurney for ambulance transport to the hospital. He also gathered photos and video taken by others who were at the scene. The photos and video captured Williams and an incapacitated and sexually compromised S.D.[3] At trial, S.D. identified Williams as her father, in both the courtroom and in the photos and video. She further testified that she was unconscious, had no recollection of the events, and certainly did not consent to sexual relations with Williams.

Within hours and in an unrelated sequence of events, Williams was treated for stab wounds at the same hospital where S.D. was being treated. Shreveport Police Officer Donald Bradford ("Ofr. Bradford") was dispatched to the hospital to arrest and transport Williams (who had non life-threatening injuries) to the police station. Once there, Williams consented to a recorded interview with sex crimes investigator Det. Karam where he admitted to being at S.D.'s apartment on the night of the rape and seeing her drunk with only her bra on. Williams denied having sex with S.D. throughout the interview until presented with photos depicting his sexual acts. Williams asked for DNA swabs and subsequently stated "I know I did it" in the latter part of the interview.

---

[3] The pictures depict Williams naked from his head to his knees where his pants and underwear are down to his knees with him being positioned between S.D.'s legs depicted as the "missionary position" for sexual intercourse. The video depicts vivid movement by Williams having intercourse with S.D.

3

Det. Karam obtained DNA samples from Williams and submitted them to the Northwest Louisiana Criminalistics Laboratory of Shreveport. Kari Dicken ("Dicken"), a forensic DNA analyst with the crime lab, qualified as an expert in forensic DNA at trial. The reference samples were compared with the recovery of DNA taken from the external genitalia and perineal swabs collected from S.D.'s vaginal opening. Dicken's report also contained two anal swabs collected from the external opening of S.D.'s rectum. Dicken explained to the jury that from Williams' DNA samples, she was able to identify Williams' DNA profile and then tested sperm cells from the samples taken from S.D. The tests revealed that Williams' DNA profile was a major contributor to both the vaginal and anal swabs taken from S.D.

On August 23, 2023, a jury unanimously convicted Williams of all four counts. Williams was adjudicated a third felony offender and his sentencing exposure was enhanced as a result. Williams appealed, asserting two assignments of error, specifically arguing: (1) insufficiency of the evidence for his third degree rape conviction, and (2) failure of the state to meet its burden of proof for the crimes against nature conviction.

## DISCUSSION

*Sufficiency of the Evidence*

On review, Williams contends he never *admitted* to penetrating S.D., that she did not remember the incident, and the state failed to prove vaginal or anal penetration as none of his DNA was found *inside* S.D.'s vagina or anus. He argues that as a result of the state's failure to prove an essential element of third degree rape — penetration — his conviction must be

vacated.[4] Williams asserts the evidence introduced at trial, when viewed under the *Jackson* standard, was insufficient to prove third degree rape.

In response, the state argues the evidence is abundantly clear to prove the element in dispute as to the third degree rape and submits that the totality of the evidence proves penetration occurred.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Ladell*, 52,847 (La. App. 2 Cir. 9/25/19), 280 So.3d 932. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the factfinder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517.

The appellate court does not assess credibility or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442; *State v. Green*, 49,741 (La. App. 2 Cir. 4/15/15), 164 So. 3d 331. Direct evidence provides proof of the existence of a fact, for example, a witness's testimony that he saw or heard something. *State v. Lilly*, 468 So. 2d 1154 (La. 1985). Circumstantial evidence provides proof of collateral facts and circumstances,

---

[4] La. R.S. 14:43 provides, in pertinent part: Third degree rape is committed when the anal, oral or vaginal sexual intercourse is deemed to be without the lawful consent of a victim because it is committed when the victim is incapable of resisting or of understanding the nature of the act by reason of stupor or abnormal condition of mind produced by an intoxicating agent or any cause and the offender knew or should have known of the victim's incapacity.

5

from which the existence of the main fact may be inferred according to reason and common experience. *Id.* When the state relies on circumstantial evidence to establish the existence of an essential element of a crime, the court must assume every fact that the evidence tends to prove and the circumstantial evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438; *Lilly supra*; *Ladell, supra; Green, supra.* The trier of fact is charged with weighing the credibility of this evidence and, on review, the same standard as in *Jackson, supra* is applied, giving great deference to the factfinder's conclusions. *Green, supra.* When the trier of fact reasonably rejects the hypothesis of innocence advanced by a defendant, the hypothesis fails, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. *State v. Sosa,* 05-0213 (La. 1/19/06), 921 So. 2d 94.

Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *Green, supra; State v. Glover*, 47,311 (La. App. 2 Cir. 10/10/12), 106 So. 3d 129, *writ denied*, 12-2667 (La. 5/24/13), 116 So. 3d 659. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence. *State v. Larkins*, 51,540 (La. App. 2 Cir. 9/27/17), 243 So. 3d 1220, *writ denied*, 17-1900 (La. 9/28/18), 253 So. 3d 154

In this case, Williams' challenge of his conviction on the basis that the state did not prove penetration is without merit as the evidence was more than sufficient to support the jury's finding of guilt.

6

Ultimately, it was the jury's duty as the factfinder to weigh the evidence presented. At trial, the jury heard testimony from S.D. that she could not recall the rape, but she was able to identify Williams in a photo naked and on top of her in a sexual position while she was unconscious. This is overwhelmingly demonstrative evidence of his penetration and guilt. Additionally, the jury viewed Williams' admission of guilt in his recorded interview with Det. Karam — which the trial court found was freely and voluntarily given — that he committed the rape. Lastly, the jury listened to Dicken (an expert forensic DNA analyst), explain how she swabbed and collected Williams' DNA from S.D.'s genital areas soon after the rape occurred. The location and collection of Williams' DNA in the perineal vaginal opening and the external aperture of the anus inside the intergluteal cleft further implies penetration took place. With testimonial, visual, and DNA evidence presented here, any rational trier of fact could not conclude anything contrary to penetration taking place. The jury reasonably found that the evidence presented at trial was sufficient as it amply demonstrated that Williams did indeed rape S.D. Moreover, in reviewing factors under La. C. Cr. P. art. 894.1, the trial court noted that Williams presented an unreasonable risk of danger to the public believing that a man who willingly violates his own daughter would willingly violate other members of society. We agree. Williams' conduct during the commission of this deplorable crime manifested deliberate cruelty to S.D. and she will surely suffer severe emotional and psychological damage as a result. This court cannot and will not disturb any determinations of guilt made by the factfinder in this case. This assignment of error lacks merit.

7

*Burden of Proof*

In his second assignment of error, Williams asserts that in the bill of information, the state charged him with crimes against nature (sodomy) of S.D.[5]  Prior to deliberations, however, the trial court instructed the jury that it could determine whether Williams was guilty of crimes against nature (incest) with S.D. instead.[6]  Williams contends the verdict form did not specify that the jury found him guilty of the crime with which he was charged.  As such, the state failed to meet its burden of proof.

In response, the state submits that Williams is not entitled to any relief under this assignment because his failure to assign error to a defect in the bill of information excludes the issue from consideration on appeal unless it was patent on the face of the record. La. C. Cr. P. art. 920.

The time for testing the sufficiency of an indictment or bill of information is before trial by way of a motion to quash or an application for a bill of particulars.  *State v. Gainey*, 376 So.2d 1240, 1243 (La. 1979).  A post-verdict attack on the sufficiency of an indictment should be rejected unless the indictment failed to give fair notice of the offense charged or failed to set forth any identifiable offense.  *State v. Campbell*, 06-0286 (La.

---

[5] La. R.S. 14:89 (A)(1) provides: A crime against nature is the unnatural carnal copulation by a human being with another of the same sex or opposite sex, except that anal sexual intercourse between two human beings shall not be deemed as a crime against nature when done under any of the circumstances described in R.S. 14:41, 42, 42.1, or 43. Emission is not necessary; and, when committed by a human being with another, the use of the genital organ of one of the offenders of whatever sex is sufficient to constitute the crime.

[6] La. R.S. 14:89 (A)(2) provides: A crime against nature is the marriage to, or sexual intercourse with, any ascendant or descendant, brother or sister, uncle or niece, aunt or nephew, with knowledge of their relationship.  The relationship must be by consanguinity, but it is immaterial whether the parties to the act are related to one another by the whole or half blood.  The provisions of this Paragraph shall not apply where one person, not a resident of this state at the time of the celebration of his marriage, contracted a marriage lawful at the place of celebration and thereafter removed to this state.

5/21/08); 983 So. 2d 810. *State v. Williams*, 480 So. 2d 721, 722, n. 1 (La. 1985); The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice. La. C. Cr. P. art. 464.

The pertinent issue for this assignment is not whether the state met its burden of proof for either sodomy or incest, because a jury undoubtedly found Williams guilty of both. We must determine whether Williams is entitled to any relief on appeal. We conclude that he is not. Williams was not prejudiced in preparing for his defense by surprise or lack of notice of the charges and facts against him in this case. He filed neither a motion to quash nor a motion for a bill of particulars to clarify the bill of information. The appropriate time would have been *prior* to trial. The record clearly shows that Williams was notified of the crime against nature charge involving sexual intercourse with his biological daughter throughout pleadings, pretrial investigations, preliminary matters, and the discovery process. Because Williams neither objected nor raised the issue at trial, he waived his right to challenge the sufficiency of the bill of information on appeal. This assignment lacks merit.

### ERRORS PATENT

A review of the record reveals two errors patent. First, there was no proper pronouncement restriction of benefits in Williams' sentences. The trial court failed to specify that his sentences were to be served without the

benefit of probation or suspension of sentence and that the third degree rape sentence is specifically to be served without the benefit of parole. Thus, Williams' sentences are illegally lenient.

A defendant in a criminal case does not have a constitutional right or a statutory right to an illegally lenient sentence. *State v. Williams*, 00-1725 (La. 11/28/01), 800 So. 2d 790. The failure to impose hard labor is harmless and self-correcting when there is a mandatory felony requiring any sentence to be served at hard labor. *State v. Thomas*, 52,617 (La. App. 2 Cir. 5/22/19), 272 So. 3d 999, *writ denied*, 19-01045 (La. 2/10/20), 292 So. 3d 61; *State v. Foster*, 50,535 (La. App. 2 Cir. 4/13/16), 194 So. 3d 674. When the trial court fails to order that a portion of a sentence to be served without benefits as statutorily mandated, the sentence will be automatically served without benefits for the requisite time period. La. R.S. 15:301.1(A). Any sentence imposed under the habitual offender provisions shall be at hard labor without benefit of probation or suspension of sentence. The benefit of parole is determined by the sentencing provisions for the underlying offense. La. R.S. 15:529.1 (G).

We again note that the trial court did not restrict the benefits of Williams' sentences as required by law. However, this is harmless and self-correcting error. Williams was adjudicated a third felony habitual offender, and as such, *all* of his sentences are to be served at hard labor without the benefit of probation or suspension of sentence. Williams' parole eligibility is determined by his underlying convictions. An illegally lenient sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review. La. C. Cr. P. art. 882 (A). This correction may be made despite the failure of either party to raise the issue. *Williams, supra*.

10

Accordingly, we amend Williams' sentences to provide that they are to be served without the benefit of probation or suspension of sentence.

The second error patent reveals a discrepancy between the minutes of the sentencing hearing held on January 18, 2024, in that the minutes do not accurately reflect the trial court's sentencing. The minutes mentioned the sentences were ordered to be served without the benefit of probation, parole or suspension of sentence. However, the restriction of benefits was not reflected on the record. A sentence shall be pronounced orally in open court and recorded in the minutes. Where there is a discrepancy between the minutes and the transcript, the transcript prevails. *State v. Smith*, 53,827 (La. App. 2 Cir. 3/3/21); 315 So. 3d 407 *State v. Burns*, 53,250 (La. App. 2 Cir. 1/15/20), 290 So. 3d 721. Therefore, we remand this matter to the trial court with instructions to amend the minutes to accurately reflect the sentences imposed.

## CONCLUSION

For the foregoing reasons, the judgments of the trial court are affirmed, the sentences are amended, and this matter is remanded with instructions to amend the court minutes to correctly reflect the sentences imposed at the sentencing hearing.

**AFFIRMED, SENTENCES AMENDED AND REMANDED WITH INSTRUCTIONS.**