Judgment rendered March 9, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,280-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

Versus

CARTEZ S. COLLINS                           Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 370551

Honorable Charles Gordon Tutt, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Peggy J. Sullivan

JAMES E. STEWART, SR.                   Counsel for Appellee
District Attorney

REBECCA A. EDWARDS
WILLIAM C. GASKINS
BRITTANY B. ARVIE
TOMMY J. JOHNSON
Assistant District Attorneys

* * * * *

Before PITMAN, STONE, and STEPHENS, JJ.

**STEPHENS, J.**

This criminal appeal by defendant, Cartez S. Collins, arises from the First Judicial District Court, Parish of Caddo, State of Louisiana. Collins was convicted of aggravated battery, adjudicated a second-felony offender, and sentenced to serve ten years at hard labor without benefit of probation or suspension of sentence. For the following reasons, Collins's conviction and sentence are affirmed.

## FACTS AND PROCEDURAL HISTORY

On September 16, 2019, Collins was involved in a physical altercation with his two brothers, J.B. and Livontae, which concluded with Collins stabbing J.B. below his right ribcage. J.B., who suffered a punctured lung and a lacerated diaphragm and liver, received medical treatment and survived his injury. Collins was subsequently arrested and charged by bill of information with attempted second degree murder. Following a jury trial commencing on October 28, 2020, a unanimous verdict of guilty of aggravated battery was returned. Collins filed a motion for post-verdict judgment of acquittal, which was denied prior to sentencing. The State filed a second-felony habitual offender bill of information. After a hearing on December 7, 2020, Collins was adjudicated a second-felony offender and sentenced to serve ten years at hard labor without benefit of probation or suspension of sentence. His motion to reconsider sentence was denied without hearing. This appeal by Collins ensued.

## DISCUSSION

*Overview of Relevant Testimony*

The State called Brandy Beverly as its first witness. Brandy testified she was the mother of the victim, the defendant, and Livontae. At the time

of the incident, J.B. was 17 and Collins was 25.[1]  Collins's girlfriend, Molly

Baker, and Brandy's sister, Sharon Arthur, were also present during the

altercation. [2]  Brandy, Sharon, Livontae, and J.B. arrived at Brandy's home

in Sharon's minivan after having been to the store.  Upon their arrival,

Collins exited the home, approached the group, and asked Sharon for a

cigarette.  Sharon and Collins began to argue about her son.  Livontae and

J.B. joined the argument, and a fistfight began when Collins swung at

Livontae while he was still inside the van.  Livontae exited the vehicle and

engaged in an altercation with Collins.  Collins then went around to the

passenger side of the vehicle and punched J.B. through the open window,

causing J.B. to begin bleeding from his mouth.  J.B. exited the van, and a

fistfight between the three brothers ensued, with Brandy and Sharon trying

to break them up.  Eventually, Livontae and J.B. heeded Brandy's

instruction to get back into Sharon's van.  At that point, Brandy had not seen

any weapons.  Livontae got in the backseat of the van while J.B. returned to

the front passenger seat.  Brandy noted Livontae entered the van from the

driver's side because the back passenger door of the van was broken and

unable to open.  Sharon returned to the driver's seat and was about to drive

away when Collins ran quickly in and out of the house and crossed in front

of Sharon's vehicle to the passenger side, where he reached through the open

front passenger window and stabbed J.B.  Brandy noted Sharon had to stop

to keep from hitting Collins as he crossed in front of the van.  Brandy

witnessed Collins stab J.B. under the ribcage.  Collins stabbed J.B. quickly

---

[1] Brandy clarified on cross-examination that Collins was actually 24 at the time of the incident.

[2] Molly Baker was identified by law enforcement as Jasmine Hill, although she is referred to as Molly Baker during the trial and throughout this opinion.

but at least two times. She described the knife as having ridges on one side of the blade and brass knuckles on the handle. Brandy pulled Collins away and applied pressure to J.B.'s wound while Collins then attempted to get to Livontae. Collins was unable to reach Livontae because the rear passenger door would not open. Sharon then sped away, taking J.B. to a nearby fire station. Brandy called 911, while Collins remained on the premises briefly before walking down the street with Molly, the knife still in his hand.

On cross-examination, Brandy confirmed she actually saw Collins stab J.B. and testified she was certain the van door was closed at the time because the side mirror was broken off when Collins reached through the window to stab J.B. She admitted the brothers had fought in the past, including altercations in which they hit one another with sticks. She also confirmed Collins had previously reported to her that his brothers had threatened to kill him. She testified all of her sons claim to have guns but she had never seen any of them with one. However, Brandy later stated, "I've only saw Cartez with a gun but, I mean, my son, my other son, I've seen him with a gun which it wasn't his, and I'm not sure if the one that Cartez had was his, which he had pictures." Brandy confirmed she had been convicted of cruelty to juveniles involving her sons.[3] She denied having a special fondness for J.B. and stated she tries to protect all of her children. She further testified she has never lied to the police.

Sharon Arthur testified Brandy was her best friend, and they refer to one another as sisters. She echoed Brandy's testimony regarding the trip to the grocery store, who was present for the altercation, the van's broken

_____

[3] Defense counsel asked Brandy if her conviction was for not reporting other people's abuse of her sons, but the State objected before she answered.

passenger side back door and side mirror, and the general chain of events of the fight between the three brothers. However, Sharon recalled that only she and Brandy had been to the store, but when they arrived at Brandy's home, the three brothers approached the vehicle to unload the groceries. Like Brandy, she testified an argument between the brothers began after she refused Collins's request for a cigarette. She further testified that the physical altercation began when Collins punched J.B. through the passenger side of her car, at which point J.B. and Livontae jumped out and began fighting with Collins. Once the altercation ended, Livontae and J.B. got back into the van, while Collins ran into the house. Prior to that point, Sharon had not seen any weapons in the fight. She first saw the knife when Collins reached through the open window and stabbed J.B. what she believed to be a single time. She stated Collins then tried to reach Livontae with his knife but was unable to because of the broken door. Sharon described the knife as looking like a hunting knife, with ridges on the blade. She stated she initially could not start her car before Collins approached because she panicked and froze. After Brandy pulled Collins away from the van, Sharon drove away and took J.B. to a nearby fire station, where he was transferred into an ambulance and transported to the hospital.

J.B. testified, consistent with Brandy, that he and Livontae had been to the grocery store with Sharon when they arrived home in Sharon's van. Thereafter, a fistfight began between Livontae and him on one side and Collins on the other. Eventually, his mother broke up the fight, and he and Livontae got back into Sharon's van—him in the front passenger seat and Livontae in the back behind the driver. Sharon returned to the driver's seat. He did not see Collins enter the house, but testified that while he was sitting

4

in the van, Collins appeared and stabbed him with a knife through the open window. In addition to the stab wound to his abdomen, he was also suffered cuts to each of his arms. J.B. testified he was in the hospital for a couple of weeks due to injuries sustained to his lungs, liver, and diaphragm.

On cross-examination, J.B. denied ever having threatened Collins or having been involved in prior fights with him. He denied ever hitting Collins with sticks or owning/handling firearms. J.B. recognized the knife, having seen it in the home prior to this incident.

Livontae Beverly was called by the State and testified as a hostile witness. He confirmed he, J.B., Brandy, and Sharon arrived at the home in Sharon's minivan after having been to the grocery store. The group exited the vehicle to unload groceries. Collins was in the yard. A fistfight between the three brothers ensued. The fight ended, and Livontae and J.B. got back in the van. Livontae saw Collins go inside the house then return to the van, at which point he stabbed J.B. through the open passenger window. Collins then attempted to reach into the backseat to stab Livontae before Sharon drove away. Livontae confirmed one side of the knife blade was smooth and the other was jagged, and there were brass knuckles on the handle. Livontae also confirmed that in addition to trying to stab him through the open window, Collins attempted to open the broken back passenger door of the van in order to gain access to him. No weapons were used in the fight prior to Collins returning from the house with the knife.

On cross-examination, Livontae denied having seen J.B. and Collins fight previously. He also denied ever using any weapons, including sticks, in a fight. When asked if he'd ever threatened to kill Collins, he responded, "I said what I said out of anger." When asked what he said, he replied, "I

can't remember right off, but I know I said some f***ed up stuff." Livontae confirmed he had seen the knife before in the home, admitted it was his, but claimed he had never used it.

James Harvey testified he was employed with the Shreveport Fire Department and was an EMT at the time of this. He stated J.B. presented with a wound to the lower right abdomen that was two to three inches in length, and that J.B. reported the wound was inflicted with a knife which was approximately six inches in length. J.B. was transported to the hospital by ambulance after his wounds were bandaged, an IV was started, and he was assessed for other injuries.

Corporal David Ware testified he was employed with the Shreveport Police Department and investigated this incident, having responded to a call from the fire department for an officer to come to the scene. When he arrived at the fire station, he observed J.B. with a stab wound to his right rib cage. He spoke only briefly with J.B. because he had difficulty talking due to the amount of pain he appeared to be suffering. Corporal Ware then drove to Brandy's residence, where he and another officer searched the home for Collins; neither Collins nor any weapons were found there. He then spoke with Brandy, who advised Collins had left and taken the knife with him.

On cross-examination, Cpl. Ware stated he has worked in law enforcement for 15 years, with probably 13 of those years in the neighborhood in which this incident occurred. He confirmed Sharon, J.B., and Livontae were all at the fire station when he arrived, and that after visiting Brandy's home and speaking with her, he went to the hospital where he observed J.B. to be in too much pain to complete an interview. Corporal

6

Ware stated he had no personal knowledge, based on his years of working in the neighborhood, of any reason Collins would have had to be concerned one of his brothers would hurt him.

Detective Jason Saiz testified he was a Shreveport Police Department homicide/violent crimes investigator. He was put into contact with Cpl. Ware and met him at the hospital. J.B. was unable to give a statement at that time, so Det. Saiz returned the next day to interview J.B. He also interviewed the other witnesses from the scene. Collins was subsequently arrested two days after the incident.

On cross-examination, Det. Saiz confirmed the initial police report listed the charges as domestic abuse battery and property damage. On redirect, Det. Saiz confirmed it was his decision, after conducting an investigation, to amend the charge to attempted second degree murder.

The defense first called Ronaco Johnson, who testified he had lived four houses down from Brandy and her sons. He had witnessed multiple altercations between the three brothers, and Collins was always on the opposite side of one or two of his brothers, including one fight where J.B. and Livontae were fighting against Collins and hit him with what appeared to be a big stick or a pole. Ronaco stated he had seen J.B. with a gun on a previous occasion, while walking down the street, and that he knew of an incident where J.B. was involved in an altercation with some other individuals, police responded, and J.B. was accused of having a gun.

On cross-examination, Ronaco confirmed he had a misdemeanor conviction for illegal carrying of a weapon as well as felony convictions for possession of a schedule II controlled dangerous substance and possession of Schedule I dangerous substance with intent to distribute.

7

Collins testified that when J.B., Livontae, Sharon, and Brandy returned from the store, he went outside to help unload the groceries; at that time, he asked Sharon for a cigarette. Sharon denied his request and accused him of "always getting into it" with her son, which Collins disputed. He claimed Sharon's son, J.B., and Livontae always threatened him, and Brandy and Sharon always took up for them. They threatened to kill and shoot him, while brandishing guns, and had previously jumped him and beaten him with sticks. Collins stated he saw them with guns the morning of this incident before they left for the store. He described the guns as black and silver. Collins claimed this fight began when Livontae exited the van and rushed him, then J.B. joined Livontae, to fight against Collins. He admitted to punching J.B. after he exited the van and joined the fight. Collins testified that one brother is bigger than him and the other is almost the same size. Collins claimed he never entered the house to retrieve the knife. He testified instead that the knife was outside in a nearby ditch all along, where Livontae had stashed it previously for safekeeping in case he needed to access it quickly, given the violent nature of the neighborhood. Collins asserted the victim and witnesses collaborated to fabricate the story that Collins retrieved the knife from inside the house. He stated he fell into the ditch mid-fight, grabbed the knife, and proceeded to defend himself by making a stabbing motion with the knife as his two brothers charged him. He testified, "I pick the knife up, and I really didn't look where I stabbed at with the knife, I just thrust my hand out with the knife." He further claimed he stabbed J.B. only once because he did not want to harm his little brother because he loved him "to death." Collins stated J.B. was never stabbed in the van, noting if that were the case, there would have been blood in the vehicle. After he stabbed

8

J.B., the fight ended, and he instructed J.B. to put pressure to the wound.

J.B. got into Sharon's van, and she drove him to the fire station. Collins

testified he never ran in front of the vehicle to stab J.B. through an open

window. Collins confirmed he has a prior felony conviction for aggravated

battery. On cross-examination, Collins testified that he was sentenced to six

years on his prior conviction.[4]

***Sufficiency of the Evidence***

In his first assignment of error, Collins asserts his conviction for

aggravated battery was not supported by sufficient evidence because the

testimony shows he was acting in self-defense when he stabbed J.B. He

argues he was afraid for his safety when he happened to locate a weapon

with which to defend himself in the midst of a fight against two people who

had previously struck him with sticks, brandished firearms, and threatened to

kill him.

The State asserts the evidence proved beyond a reasonable doubt that

Collins committed an aggravated battery upon J.B. and did not act in self-

defense. The State argues the jury made a credibility determination in

believing the State's witnesses and in disbelieving Collins's self-serving,

unsupported version of events.

The standard of appellate review for a sufficiency of the evidence

claim is whether, after viewing the evidence in the light most favorable to

the prosecution, any rational trier of fact could have found the essential

elements of the crime proven beyond a reasonable doubt. *Jackson v.*

---

[4] The defense rested at the conclusion of Collins's testimony. Molly Baker was subpoenaed by the defense to testify at trial but did not appear. A writ of attachment was issued, and she was expected to be produced to testify the next day, but the defense elected to rest without her testimony.

*Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 2001-1658 (La. 5/20/03), 851 So. 2d 921, c*ert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 2005-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Dotie*, 43,819 (La. App. 2 Cir. 1/14/09), 1 So. 3d 833, *writ denied*, 2009-0310 (La. 11/6/09), 21 So. 3d 297.

The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. *State v. Casey*, 1999-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d 62 (2000); *State v. Walker*, 53,975 (La. App. 2 Cir. 6/30/21), 321 So. 3d 1154, *writ denied*, 2021-01334 (La. 11/23/21), 328 So. 3d 8. The appellate court does not assess credibility or reweigh the evidence. *State v. Smith*, 1994-3116 (La. 10/16/95), 661 So. 2d 442; *State v. Green*, 49,741 (La. App. 2 Cir. 4/15/15), 164 So. 3d 331. A reviewing court affords great deference to the trier of fact's decision to accept or reject the testimony of a witness in whole or in part. *State v. Broadway*, 53,105 (La. App. 2 Cir. 1/15/20), 288 So. 3d 903, *writ denied*, 2020-00372 (La. 7/24/20), 299 So. 3d 78.

In a non-homicide situation, a claim of self-defense requires a dual inquiry: first, an objective inquiry into whether the force used was reasonable under the circumstances; and, second, a subjective inquiry into whether the force used was apparently necessary. *State v. Broadway*, *supra*. The burden of proving self-defense in a non-homicide case rests with the

defendant to prove the defense by a preponderance of the evidence. *State v. Walker*, *supra.*

The offense of aggravated battery is defined as a battery committed with a dangerous weapon. La. R.S. 14:34(A). A battery is defined as the intentional use of force or violence upon the person of another. La. R.S. 14:33.

The record clearly shows Collins committed an aggravated battery upon his brother J.B. when he stabbed him with a knife. Aside from Collins, the testimony of each eyewitness supports the finding that Collins's action unequivocally constituted an intentional use of force or violence against J.B. Furthermore, testimony at trial does not support Collins's claim of self-defense. The testimony of the State's witnesses was consistent as to the pertinent facts of what happened, including, significantly, that the fight was over and both J.B. and Livontae were seated in Sharon's van when Collins stabbed J.B. through the open window, and that prior to that time, no weapons had been present during the fight between the three brothers. Despite his claims of being bullied by his younger brothers in the past, Collins failed to prove that, in this instance, his stabbing J.B. was both reasonable and necessary. This assignment of error is without merit.

### Excessive Sentence

In his second assignment of error, Collins asserts the sentence imposed is unconstitutionally harsh and excessive given the facts and circumstances of the case. He argues that although his sentence falls within the statutory limits, it is nonetheless constitutionally excessive. In particular, Collins asserts the trial court's application of the article 894.1 factors was erroneous. He argues that as he acted in self-defense, his offense should not

11

have been deemed to manifest deliberate cruelty to the victim. He also asserts his offense did not create a risk of death or great bodily harm to more than one person. Collins further notes that the crime of aggravated battery requires the State to prove a dangerous weapon was used to commit a battery (actual violence); therefore, the use of actual violence and use of weapon should not have been considered as aggravating factors during his sentencing. Additionally, Collins asserts the trial court failed to consider his personal or employment history, his young age, or the fact that he is a father. He also notes the trial court failed to order a presentence investigation to assist in sentencing.

In response, the State notes that in 2013, Collins pleaded guilty to aggravated battery after being charged with attempted second degree murder. In that matter, Collins got into an argument with the victim and another man walking by his house. During the argument, he went inside, returned with a firearm and fired it, hitting one of the men. He received a six-year hard labor sentence. The State argues the facts established at trial supported the aggravating factors found applicable by the trial court and asserts that this midrange sentence for a second-felony offender, whose offense was similar to his prior offense for which he served a six-year sentence, is clearly not disproportionate to the seriousness of the offense or shocking to the sense of justice.

An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the

article.  *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. West*, 53,526 (La. App. 2 Cir. 6/24/20), 297 So. 3d 1081.  The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions.  *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. West*, *supra*.  The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation.  *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. West*, *supra*.  There is no requirement that specific matters be given any particular weight at sentencing.  *State v. Shumaker*, 41,547 (La. App. 2 Cir. 12/13/06), 945 So. 2d 277, *writ denied*, 2007-0144 (La. 9/28/07), 964 So. 2d 351.  Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1.  *State v. Lanclos*, *supra*; *State v. DeBerry*, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 2016-0959 (La. 5/1/17), 219 So. 3d 332.

Second, the court must determine whether the sentence is constitutionally excessive.  A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering.  *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bonanno*, 384 So. 2d 355 (La. 1980).  A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice.  *State v. Weaver*, 2001-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Meadows*, 51,843 (La. App. 2 Cir. 1/10/18), 246 So. 3d 639, *writ denied*, 2018-0259 (La. 10/29/18), 254 So. 3d 1208.

The sentencing court has wide discretion in imposing a sentence within statutory limits, and such a sentence will not be set aside as excessive in the absence of manifest abuse of that discretion. *State v. Williams*, 2003-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Duncan*, 47,697 (La. App. 2 Cir. 1/16/13), 109 So. 3d 921, *writ denied*, 2013-0324 (La. 9/13/13), 120 So. 3d 280. The trial court is in the best position to consider the aggravating and mitigating circumstances of a particular case and, therefore, is given broad discretion in sentencing. *State v. Cook*, 1995-2784 (La. 5/31/96), 674 So. 2d 957, *cert. denied*, 519 U.S. 1043, 117 S. Ct. 615, 136 L. Ed. 2d 539 (1996); *State v. Jackson*, 51,575 (La. App. 2 Cir. 9/27/17), 244 So. 3d 764.

At the time of the offense, the punishment for aggravated battery was a fine of $5,000, imprisonment with or without hard labor for not more than ten years, or both. La. R.S. 14:34(B). As a second-felony offender, Collins faced imprisonment for a term not less than one-third of the longest term and not more than twice the longest term prescribed for a first conviction. La. R.S. 15:529.1(A)(1). Therefore, Collins was exposed to a sentence not less than 3.33 years and not more than 20 years.

In sentencing Collins to ten years at hard labor, without benefit of probation or suspension of sentence, the trial court noted it had reviewed the guidelines of La. C. Cr. P. art. 894.1 and determined no mitigating circumstances were found. Furthermore, the trial court found that subsections 1, 5, 6, and 10 were applicable. Those factors listed by the trial court provide:

> (1) The offender's conduct during the commission of the offense manifested deliberate cruelty to the victim.

> (5) The offender knowingly created a risk of death or great bodily harm to more than one person.

14

(6) The offender used threats of or actual violence in the commission of the offense.

(10) The offender used a dangerous weapon in the commission of the offense.

La. C. Cr. P. art. 894.1

The record clearly shows the trial court did not abuse its discretion in sentencing Collins. While we agree with Collins that factors (6) and (10) of La. C. Cr. P. art. 894.1 are redundant to consider when imposing a sentence for the crime of aggravated battery, and concede that factor (5) is arguably inapplicable in this case, factor (1) applied by the trial court is irrefutably applicable.

As discussed above, Collins's claim of self-defense is without merit; therefore, such claim does not dispense with the aggravating factor found by the trial court that Collins conduct manifested deliberate cruelty to the victim. It is obvious to this Court that by stabbing his younger brother in the abdomen with a large knife while J.B. was seated, defenseless in a vehicle with the door shut, Collins manifested deliberated cruelty upon him.

Additionally, in sentencing Collins, the trial court specifically stated it did not find any mitigating factors—the trial court did not fail to consider such factors; it merely found that they were inapplicable to the case. Such finding was within the trial court's vast discretion. Furthermore, while this Court is disappointed the trial court did not avail itself of a presentence investigation, a useful sentencing resource, the trial court was certainly not required to do so. See La. C. Cr. P. art. 875; *State v. Wilson*, 53,913 (La. App. 2 Cir. 5/26/21), 317 So. 3d 923.

15

The record clearly contains an adequate factual basis for Collins's sentence.  J.B. suffered grave injuries at the hand of his brother and could have been killed.  This midrange sentence of 10 years hard labor, for a perpetrator with a prior violent felony conviction for which he was sentenced to six years hard labor, does not shock the sense of justice. Accordingly, this assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, the sentence and conviction of Cartez S. Collins are affirmed.

AFFIRMED.